IN the INTEREST OF K.S.,
K.S., and C.S., Children

NO. 14–15–00008–CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed April 26, 2016

Walter P. Mahoney, Jr., Pasadena, TX, for appellant.

Terisa G. Taylor, Houston, TX, for appellee.

Panel consists of Justices Boyce, Busby, and Brown.

## OPINION

J. Brett Busby, Justice

Following a bench trial, the trial court signed an order appointing appellee, Esther, sole managing conservator of her minor grandchildren.[1] Appellants, Michael and Diana, are the children's parents, and they challenge the order, which named them possessory conservators. Although Diana is permitted supervised visits of the children, Michael is permitted no visitation or access.

On appeal, appellants argue Esther did not have standing to file an original suit seeking sole managing conservatorship of her grandchildren. We conclude that Esther had standing under section 102.003(a)(9) of the Family Code as a person who had actual care, control, and possession of the children for at least six months. In their second and third issues, Michael and Diana argue the trial court abused its discretion by not appointing

them joint managing conservators and deviating from the standard possession order. Because the trial court heard ample evidence to support its finding that Michael and Diana abused or neglected to protect the children, we overrule those issues and affirm the trial court's order.

## BACKGROUND

Esther is the maternal grandmother of Michael and Diana's nine children, whose ages range from eleven to twenty-eight years old. When Esther filed her original petition seeking sole managing conservatorship of the children, five of the children were minors and were the subject of the suit. Presently, only three of the children are minors—K.S., K.S., and C.S.

Evidence offered at trial shows the following facts. From 1990 until 2011, Michael, Diana, and their children resided at Esther's house in Hockley, Texas. Michael, Diana, and their children lived in what they described as the "main house" while Esther and her late husband occupied the attached "mother-in-law" suite. Esther spent each day in the main house with the children and cared for their daily needs, such as food, clothing, bathing, transportation, homework, and medical care. Esther and her late husband also supported Michael, Diana, and their children financially throughout this time.

In August 2011, a dispute arose between Michael and Esther; and Michael ordered her to leave the home immediately. Esther, along with all but the two youngest children, hastily packed their belongings and left. Michael changed the locks of the home and did not allow Esther or the children any further access to the home.

---

1. To protect the privacy of the parties in this case, we identify the children by their initials or pseudonyms, and we identify the parents and grandparent by their first names only.

*See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); *In re C.M.C.*, 273 S.W.3d 862, 866 (Tex.App.–Houston [14th Dist.] 2008, no pet.).

Representatives from the Texas Department of Family and Protective Services later met with Esther, Michael, Diana, and the children. The parties agreed to a family safety plan, which prohibited Michael from contacting the children.

On September 19, 2011, Esther filed a suit affecting the parent-child relationship, requesting that the court appoint her the sole managing conservator of the minor children and order that visitation and access by Michael and Diana be supervised. Her petition included a sworn affidavit alleging, in part, that Michael verbally and physically abused the children and that Diana was unable or unwilling to protect the children from his abuse.[2]

After a hearing, the court issued a temporary order appointing Esther sole managing conservator of the children and appointing Michael and Diana temporary possessory conservators of the children. The order granted Diana visitation as mutually agreed upon by the parties and with Esther's permission. Michael was ordered to have no contact with the minor children.

Following the temporary-order hearing, the parties reached a Rule 11 agreement. The trial court held a second hearing to consider the terms of the parties' agreement and hear additional evidence.[3] The trial court issued a modified order that, in part, granted Diana visitation with the children under the supervision of the Victim's Assistance Centre, Inc., S.A.F.E. Program. The trial court found credible evidence that Michael "has a history or pattern of physical abuse or family violence during the two-year period preceding the filing of [the] suit directed toward the minor children" and ordered that he have

no further contact with the minor children. The trial court also ordered psychologist Edward Silverman, M.D., to evaluate the parties and provide the court a report setting out his recommendations with respect to all issues pertaining to the conservatorship of the children.

Following a bench trial, the trial court issued a final order appointing Esther sole managing conservator and appointing the parents possessory conservators of K.S., K.S, and C.S. The final order included a modified possession order, which granted the parents restricted access to the children due to the court's finding that they "engaged in a history or pattern of neglect and/or physical abuse of the children." Diana was granted visitation under the supervision of the S.A.F.E. Supervised Visitation Program. Michael was ordered to have no visitation or access to the children based on the court's finding that awarding him possession of or access to the children would endanger the physical health and emotional development of the children and would therefore not be in their best interest. This appeal followed.

## ANALYSIS

### I. Esther was entitled to maintain this suit under the Family Code.

#### A. Standard of review and applicable law

In their first issue, Michael and Diana argue that the trial court abused its discretion in naming Esther sole managing conservator of the minor children because her petition failed to establish her standing to sue. Standing is a constitutional prerequisite to maintaining a suit under Texas

---

**2.** Esther also filed a second amended petition on January 28, 2013.

**3.** In the Rule 11 agreement, the parties agreed that Esther would be the temporary sole managing conservator and the parents would remain temporary possessory conservators pending the trial court's final order.

law. *See Tex. Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). The test for constitutional standing in Texas requires that there be a "real controversy between the parties, which . . . will be actually determined by the judicial declaration sought." *Id.* at 446. Standing requires the claimant to demonstrate a particularized injury distinct from that suffered by the general public—there must be an actual grievance, not a hypothetical or generalized grievance. *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex.2001). Constitutional standing is required for the court to have subject-matter jurisdiction; thus, it cannot be waived and may be raised by a party or a court at any time, including on appeal. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445.

▆ In addition to constitutional limitations on standing, the Family Code contains statutory restrictions on who may bring suit. *In re A.M.S.*, 277 S.W.3d 92, 96 (Tex.App.–Texarkana 2009, no pet.); *see Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex.2000) (explaining that statutory prerequisite to maintaining suit affects plaintiff's right to relief rather than court's jurisdiction).[4] The Texas Legislature has provided a comprehensive framework for standing in the context of suits involving the parent-child relationship. *See* Tex. Fam. Code § 102.003–007; *see also Jasek v. Tex. Dept. of Family & Protective Servs.*, 348 S.W.3d 523, 528 (Tex.App.–Austin 2011, no pet.). When standing is conferred by statute, we use that statutory framework to analyze whether the petition has been filed by a proper party. *Jasek*, 348 S.W.3d at 528.[5] The party seeking relief must allege and establish standing within the parameters of the language used in the statute. *In re H.G.*, 267 S.W.3d 120, 124 (Tex.App.–San Antonio 2008, pet. denied). The petitioner must also show the facts establishing standing existed at the time suit was filed in the trial court. *In re Vogel*, 261 S.W.3d 917, 921 (Tex.App.–Houston [14th Dist.] 2008, no pet.).

As the children's grandmother, Esther has constitutional standing to bring this suit. *See Young v. Young*, 693 S.W.2d 696, 698 (Tex.App.–Houston [14th Dist.] 1985, writ dism'd) (holding, as a matter of law, that grandparents possess a justiciable interest in their grandchildren). The parents, however, challenge Esther's ability to maintain this suit under the Family Code because: (1) her statutory standing is fixed at the time the suit is filed; (2) not a single fact in the verification or pleadings in the original petition meet the standing requirement of section 102.004(a)(1); and (3) boorish behavior, unemployment, and grandparent opinions are not a statutory basis to sue for a parent's rights to their children. Esther responds that she has standing based on section 102.003(a)(9) of the Family Code, which provides:

> An original suit may be filed at any time by . . . a person, other than a foster parent, who has had actual care, control, and possession of the child for at least

---

4. See also *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–61, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010).

5. Although courts sometimes refer to the question whether a party has a cause of action under a statute as one of "statutory standing," that label can be misleading because the absence of a valid cause of action does not implicate subject-matter jurisdiction. *See Lexmark Int'l, Inc. v. Static Control Com-* *ponents, Inc.*, —— U.S. ——, 134 S.Ct. 1377, 1387 & n. 4, 188 L.Ed.2d 392 (2014). Because the Family Code uses the word "standing" in describing its restrictions on who may bring suit, however, we use the term statutory standing here to distinguish the Family Code's requirements from the constitutional standing requirements necessary to subject-matter jurisdiction.

six months ending not more than 90 days preceding the date of the filing of the petition.

Tex. Fam.Code Ann. § 102.003(a)(9) (West Supp.2015).[6]

Esther states in her brief that appellants filed a motion to dismiss Esther's petition in the trial court for lack of standing, but the record does not contain the motion and does not show that the trial court ruled on the issue of standing. Assuming without deciding that appellants may challenge on appeal Esther's ability to maintain this suit under the Family Code,[7] we examine the pleadings as well as the reporters' records from the bench trial in considering appellants' challenge. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000); *see also In re Vogel*, 261 S.W.3d at 920–21 (holding grandparent had standing under section 102.004(a)(1) after review of the record, which included trial testimony); *In the Interest of Y.H.T.*, No. 10–14–00189–CV, 2015 WL 1021094, at *2–3 (Tex.App.–Waco Mar. 5, 2015, no pet.) (mem.op.) (holding grandparent did not have standing under section 102.003(a)(9) after reviewing trial testimony).

■■■ Here, the trial court found that it had jurisdiction of the case and all the parties, but made no underlying findings of fact or conclusions of law regarding its determination of standing. Consequently, we are to imply such fact findings as necessary to support the legal conclusion that Esther had standing. *In re M.P.B.*, 257 S.W.3d 804, 808 (Tex.App.–Dallas 2008, no pet.). We review the trial court's conclusion that Esther had standing de novo; to the extent relevant facts are disputed, we review for legal and factual sufficiency the implied findings of fact supporting the conclusion of standing. *Id.*[8]

**B. Esther met the requirements of section 102.003(a)(9).**

■■■ Using these principles, we examine whether Esther satisfied section 102.003(a)(9) by having actual care, control, and possession of the children for six months ending not more than 90 days preceding the date the petition was filed. This Court has concluded that section 102.003(a)(9) does not require the person asserting standing to demonstrate exclusive control of the child. *See* Tex. Fam. Code Ann. § 102.003(a)(9); *In re J.J.J.*, No. 14–08–1015–CV, 2009 WL 4613715, at *2 (Tex.App.–Houston [14th Dist.] Dec. 8, 2009, no pet.) ("The assertion that J.J.J. lived in Jones's home during a particular

6. Esther also claimed standing under section 102.004(a)(1) (West 2014). Because we hold Esther met the standing requirements of section 102.003(a)(9), we need not address whether she also satisfied section 102.004(a)(1).

7. Cf. Tex. R. App. P. 33.1(a); *City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex.2009) (observing that since *Kazi*, the supreme court has "been reluctant to conclude that a [statutory] provision is jurisdictional, absent clear legislative intent to that effect"); *Kazi*, 12 S.W.3d at 76–77; *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex.1987) ("A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no juris-

diction to enter the judgment, or no capacity to act as a court."); cf. *In re Derzapf*, 219 S.W.3d 327, 331–33 (Tex.2007) (orig. proceeding) (holding step-grandfather lacked statutory standing under Family Code in case where objection to statutory standing was ruled on by trial court).

8. When an issue of standing is resolved prior to trial, in contrast, we take as true all evidence favorable to parties alleging standing, indulging every reasonable inference and resolving any doubts in their favor. If there is a fact question regarding standing, that question must be resolved by the fact finder. *See In re M.J.G.*, 248 S.W.3d 753, 758 (Tex.App.–Fort Worth 2008, no pet.).

time period is not necessarily mutually exclusive of the assertion that Lowery had care, control, and possession of the child during that same time period."); *see also In re Shifflet*, 462 S.W.3d 528, 538, 540 (Tex.App.–Houston [1st Dist.] 2015, no pet.); *In re Crumbley*, 404 S.W.3d 156, 160 (Tex.App.–Texarkana 2013, no pet.); *In re M.P.B.*, 257 S.W.3d 804, 809 (Tex.App.–Dallas 2008, no pet.) (concluding grandmother had standing under section 102.003(a)(9) despite sharing actual care, control, and possession of child with child's mother). Nor does the section require that the person asserting standing have legal control over the child or that the parent have voluntarily relinquished permanent care, control, and possession of the child. *Jasek*, 348 S.W.3d at 535. Accordingly, we focus on whether Esther developed and maintained a relationship with the children "entailing the actual exercise of guidance, governance, and direction similar to that typically exercised by parents with their children." *Id.* at 533.

A determination of standing under this section is necessarily fact-specific. *In re M.P.B.*, 257 S.W.3d at 809. Cases in which courts have found actual care, control, and possession include those in which the person asserting standing (1) lived in the same house as the child or lived in a home where the child stayed overnight on a regular and frequent basis, (2) made financial contributions benefitting the child, (3) was involved with the child's education, and (4) was involved in matters involving the child's general upbringing, such as health care, feeding, and clothing. *Jasek*, 348 S.W.3d at 534 (citing *In re M.K.S.-V.*, 301 S.W.3d 460, 463–65 (Tex. App.–Dallas 2009, pet. denied); *In re M.P.B.*, 257 S.W.3d at 809; *Smith v. Hawkins*, 2010 WL 3718546, at *3 (Tex.App.–

Houston [1st Dist.] Sept. 23, 2010, pet. denied).

In this case, we conclude Esther's petition and the evidence introduced at trial establish her standing under section 102.003(a)(9). Esther's second amended petition cites section 102.003(a)(9) and alleges she has standing because she "has had actual care, control, and possession of the children for the past six months ending not more than 90 days preceding the date of the filing of the petition." Esther attached and incorporated into her petition an affidavit in which she testifies:

My husband and I had been the primary caretakers and providers for the grandchildren. We have bought most of their food, cloth[e]s, healthcare, dental care, taken them and picked them up from school. We have attended most of their school and after school activities. They have lived with us for the last 21 years while we have paid most of their living expenses.

By alleging that she is a person who meets each of the section's requirements, Esther's petition pleads a proper basis for standing and is sufficient to confer standing absent controverting evidence. *In re K.D.H.*, 426 S.W.3d 879, 884 (Tex.App.–Houston [14th Dist.] 2014, no pet.).

At trial, the court heard testimony regarding Esther's care, custody, and control of the children. Three of the children who were no longer minors—David, Donald, and Ken—were among the witnesses at trial, and each testified that Esther was the children's primary caretaker. Each child testified similarly: Esther bought all the groceries; cooked all the meals; drove the children to school, extra-curricular activities, and the doctor; gave the older children money for gas; bought their books; helped them with their homework; and did their laundry. Members of the family's church and one child's scout leader also testified that Esther drove the

children to and from their activities and was the family member most involved in their activities. Dr. Silverman concluded in his report that Esther fulfilled the "primary parenting role with her grandchildren for years."[9] We conclude this evidence supports an implied finding that Esther had actual care, custody, and control of the children.

The record also supports an implied finding Esther had such care, custody, and control of the children for the requisite six months and within the ninety days prior to her suit. Michael and Diana do not dispute that the children lived at Esther's residence from 1990 until the domestic dispute in August 2011. Esther's suit followed on September 20, 2011—well within ninety days of the incident. For these reasons, we overrule the parents' first issue and hold the trial court did not err in concluding that Esther had statutory standing to maintain this suit under section 102.003(a)(9).

## II. The trial court did not abuse its discretion when it appointed Esther sole managing conservator of the children.

In their second issue, Michael and Diana contend the trial court abused its discretion by not appointing them joint managing conservators of the children. Specifically, they argue: (1) the trial court's order contravenes the Family Code's parental presumption; and (2) there is no evidence to support the denial of joint managing conservatorship. For the reasons discussed below, we disagree.

### A. Standard of review and applicable law

We review managing conservatorship orders for abuse of discretion. *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex.App.–Houston [14th Dist.] 2010, pet. denied). A court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to guiding principles. *Id.* In this context, legal and factual sufficiency challenges are not independent grounds of error; instead, they are factors to be considered in determining whether the trial court abused its discretion. *In re Marriage of Butts*, 444 S.W.3d 147, 153 (Tex. App.–Houston [14th Dist.] 2014, no pet.). Trial courts have wide discretion with respect to custody, control, possession, support, and visitation matters. *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex.App.–Houston [1st Dist.] 2002, pet. denied) (giving deference to trial court because it faces the parties and witnesses and is in the best position to observe their demeanor and personalities). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *In re R.T.K.*, 324 S.W.3d at 900.

### B. Some evidence supports Esther's appointment as sole managing conservator.

A court's primary consideration in any conservatorship case "shall always be the best interest of the child." Tex. Fam. Code Ann. § 153.002 (West 2014). The presumption that the best interest of the child is served by awarding custody to the parent is well established in Texas law. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990). The presumption is codified in Chapter 153 of the Texas Family Code, which governs original custody de-

9. Dr. Silverman's conclusions are based on his evaluation of the parties and the minor children conducted pursuant to the amended temporary orders and the Rule 11 agreement filed with the court. Dr. Silverman interviewed, examined, evaluated, tested, and consulted with Michael and Diana; he also interviewed Esther and the minor children.

terminations such as this one.[10] Under the statute, the trial court is required to presume that the appointment of the parents as joint managing conservators is in the best interest of the children until evidence is presented to rebut this presumption. Tex. Fam. Code Ann. § 153.131(b); *Butts,* 444 S.W.3d at 154. The party seeking appointment as sole managing conservator has the burden to rebut the presumption, which can be done in two ways: (1) the non-parent shows that the appointment of the parent would significantly impair the child's health or development; or (2) the trial court makes a finding of a history of family violence. *See In re C.A.M.M.,* 243 S.W.3d 211, 215 & n. 8 (Tex.App.–Houston [14th Dist.] 2007, pet. denied). The court may not appoint a parent as a managing conservator if "credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child...." Tex. Fam. Code Ann. § 153.004(b) (West 2014).

In its order, the trial court included a finding that Michael and Diana abused or neglected to protect the children.[11] The trial court was therefore prohibited from appointing the parents as managing conservators. We hold there is some evidence in the record to support the court's finding.[12]

According to the children's testimony, their father often acted violently toward the children. At trial, David testified that Michael slapped his daughter K.S. across the face because she said something he did not like. David also testified that Michael frequently grabbed the children by the throat, kicked them, threw them around, slapped them against the wall, shoved his finger into their noses, and hit them in the chest. Michael hit the children with objects such as a 2' × 4' piece of wood, a bull whip, and an electrical cord. To escape his father's violence, David testified he would go to the roof of the house and hide.

Another child who testified, Donald, described a particular incident in which Michael pushed him into a corner, kicked him several times, and punched him. Donald testified that on another occasion, Michael slapped him repeatedly and told Donald to hit him back. According to Donald, Michael regularly hit or kicked the other children as well. Donald expressed his

---

10. Section 153.131 of the Family Code provides:

(a) Subject to the prohibition in Section 153.004, unless the court finds that the appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

(b) It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection.

Tex. Fam. Code Ann. § 153.131 (West 2014).

11. The order states: "The court finds that [appellants] have a history or pattern of neglect and/or physical abuse of the children and the failure to protect the children during the two-year period preceding the filing of this suit or during the pendency of this suit. The court further finds that awarding [Esther] access to the children would not endanger the children's physical health or emotional welfare and would be in the best interest of the children."

12. We note that sub-section 153.004(b) requires a finding of abuse or neglect against "the other parent, a spouse, or *a* child," and is not limited to the particular children involved in the suit. Tex. Fam. Code Ann. § 153.004(b) (emphasis added). Testimony regarding the parents' alleged abuse or neglect of any of the children is therefore relevant to our analysis.

concern that the younger children—the subject of this suit—would be abused if they returned· to their parents. .Donald testified that Michael's violence was "random" and that he would get mad "out of nowhere" and "just smack you across the face."· Donald's testimony also corroborated David's testimony regarding the incident in.which Michael slapped K.S. across the face.. Donald testified that when he confronted Michael about the incident, Michael ·kicked him out of the house. Jolynne Black, a family friend and member of their.church, testified that Donald spent the night. at. their house for a period of time because Donald told them that his father had kicked him out of the house and he did not have a place to stay. Black also testified that she witnessed Michael slap one of the children in her face and pull her hair. Black reported the incident to church leadership.

David ·and Donald both testified that Diana was physically violent on occasion, but mostly just watched her husband physically abuse the children. .They testified that she used electrical cords and a hanger to swat the children on their arms, thighs, and buttocks, but that only occurred "two or three" times or "every once in a while." If any of the children approached her about Michael's abuse, she would not try to stop the abuse, but would simply say, "[n]ow you know how you don't want to be when you're a parent."

Evidence contradicting this testimony came from one of the other children, Mark, and from the parents, who testified that the alleged abuse never occurred. A member of the family's church who previously counseled the family also testified that she had never seen Diana abuse the children. As the finder of fact and sole judge of the credibility of the witnesses, the trial court was free to disbelieve this testimony and believe the other witness's accounts of the parents' abuse. *See In re*

*S.A.H.*, 420 S.W.3d 911, 927 (Tex.App.–Houston [14th Dist.] 2014, no pet.).

The trial court's finding is also supported by Dr. Silverman's report. Dr. Silverman concluded that the children's allegations of abuse are "simply too numerous and too consistent in certain respects to dismiss" and noted that it would be "highly unusual for eight of nine children to turn against both of their parents to this extent if all of their allegations were baseless." Dr. Silverman found there to be "little question that [Michael] interacted in a manner which other family members, including his·wife, found very objectionable." As for Diana, Dr. Silverman found no significant allegations of her mistreating the children, with the exception of her failure to intervene and protect the children from Michael. Dr. Silverman recommended the children reside with Esther and concluded that placement of any of the children in Michael's care would place those children at significant risk due to Michael's anger issues. ·

We conclude there is some evidence to overcome the presumption that appointing Michael and Diana joint managing conservators is in the children's best interest. Therefore, the trial court did not abuse its discretion in awarding Esther sole managing conservatorship of the children. *See Butts*, 444 S.W.3d at 154 (holding that some evidence existed to ·support finding that appointing mother sole managing conservator was in child's best interest, thus also rebutting presumption in favor of appointing parents as joint managing conservators). We overrule appellants' second issue.

### III. The trial court did not abuse its discretion when it deviated from the Family Code's standard possession order.

 Michael and Diana argue in their third issue that the trial court abused its

discretion when it granted them access to the children that was more restrictive than that provided by the Family Code's standard possession order. Based on the evidence of family violence discussed above, we hold the trial court did not abuse its discretion.

The Family Code includes a standard possession order for parents residing 100 miles or less from the children. Tex. Fam. Code Ann. § 153.312 (West 2014). There is a rebuttable presumption that the standard possession order "(1) provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator; and (2) is in the best interest of the child." Tex. Fam. Code Ann. § 153.252. The trial court may deviate from the standard possession order if necessary for the child's best interest. Tex. Fam. Code Ann. §§ 153.193, 153.256; see Ohendalski v. Ohendalski, 203 S.W.3d 910, 915 (Tex. App.–Beaumont 2006, no pet.) (holding no abuse of discretion to deviate from standard possession order based on finding of family violence); see also In re Walters, 39 S.W.3d 280, 283 (Tex.App.–Texarkana 2001, no pet.) (affirming trial court's finding that standard possession order was not in child's best interest due to mother's alcoholism, which placed child in potentially harmful situations).

The trial court is also permitted to place conditions on a parent's access, such as supervised visitation, if necessary for the child's best interest. Tex. Fam. Code Ann. § 153.004(e) ("It is a rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised. visitation with the child if credible evidence is presented of a history or pattern of past or present child neglect or physical or sexual abuse by that parent directed against the other parent, a spouse, or a child."); In re A.L.E., 279 S.W.3d 424, 431,

432 n. 7 (Tex.App.–Houston [14th Dist.] 2009, no pet.). The trial court may not allow a parent to have access to a child for whom it is shown by a preponderance of the evidence that there is a history or pattern of committing family violence during the two years preceding the date of the filing of the suit. Tex. Fam. Code. Ann. § 153.004(d)(1).

Here, the trial court issued a modified possession order that gives Michael and Diana more restrictive assess than the standard possession order based on its finding that they "have a history or pattern of neglect and/or physical abuse of the children and failure to protect the children during the two-year period preceding suit." The court further found that awarding Diana access to the children through supervised visitation of the children would not endanger the children's physical health or emotional welfare and would be in the best interest of the children. As for Michael, the court found that awarding him possession or access to the children would endanger the physical health and emotional development of the children and would not be in their best interest. Michael is therefore prohibited from having any visitation or access with the children.

The Family Code permits such restrictions on Michael's and Diana's access given the trial court's findings and the evidence of abuse and failure to protect discussed in Part II.B. above. See Tex. Fam. Code Ann. §§ 153.004(d)–(e), 153.256. Michael and Diana have not demonstrated that the trial court abused its discretion in deviating from the standard possession order. Accordingly, we overrule their third issue.

CONCLUSION

Having overruled each of appellants' issues, we affirm the trial court's order ap-

pointing Esther sole managing conservator of the children.

