**Affirmed and Memorandum Opinion filed March 6, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00758-CV

## IN THE INTEREST OF I.M.F., A CHILD

**On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 2016-04078J**

## M E M O R A N D U M    O P I N I O N

The Texas Department of Family and Protective Services (the Department) filed suit against J.A.B. (Mother) and S.G.F. (Father) seeking termination of their parental rights of their daughter, Ivy.[1] At trial, the Department abandoned its request for termination and instead asked that Ivy's paternal grandmother, B.B. (Grandmother), be named Ivy's managing conservator. The trial court appointed Grandmother as Ivy's sole managing conservator and named Mother and Father as Ivy's possessory conservators. Mother moved for a new trial, which was denied.

---

[1] We use pseudonyms or initials to refer to the child, parents, and other family members involved in this case. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

Only Mother appeals. She contends the trial court abused its discretion by: (1) awarding Grandmother sole managing conservatorship; and (2) placing arbitrary and unreasonable restrictions on Mother's right to possession of and access to Ivy. She does not complain about the denial of her motion for new trial.

We find no abuse of discretion and affirm the judgment.

BACKGROUND

**A.    Removal**

The Department received a report in May 2015 of "serious concerns" about the parents' ability to care for two-day-old Ivy. The reporter alleged Mother and Father appeared to lack any parenting skills and were not engaging with the baby. The parents were said to have become "so agitated and hostile verbally" that Ivy had to be removed from the room for her safety. Two more reports in as many months expressed concern for Ivy's welfare, alleging Mother and Father used drugs in her vicinity. While under the influence of drugs, Father reportedly became so aggressive that the police took him to a psychiatric hospital for assessment. Mother allegedly had "extensive" psychiatric history and suffered from untreated mental illness.

Mother and Father were referred to family-based safety services (FBSS), where they agreed to complete services and allow Ivy to live with Grandmother. As time went by, though, they reportedly refused to participate in services or submit to drug tests. Concerns developed about domestic violence between Mother and Father and between Mother and Grandmother. The parents' behavior was allegedly so out of control at a family team meeting that no agreement could be reached about how to proceed.

In July 2016, the Department filed this lawsuit for protection of a child for conservatorship and termination in a suit affecting the parent-child relationship,

2

attaching Sullivan's affidavit to the petition. The Department asked to be named Ivy's temporary managing conservator.

## B.    Pretrial proceedings

The trial court held a full adversary hearing at the end of August 2016. After the hearing, the court signed an order removing Ivy from Mother's and Father's care and naming the Department as Ivy's temporary managing conservator. Ivy remained with Grandmother.

Following a status hearing in mid-October 2016, the trial court signed an order approving the family service plan the Department created for Mother and directing Mother to comply with the plan. The trial court's orders signed January 11, 2017 and April 12, 2017 both state Mother "has demonstrated adequate and appropriate compliance with the service plan." The service plan is not in the appellate record.

## C.    Trial

Trial was held on July 12, 2017. Mother appeared in person and was represented by counsel. Father appeared by telephone from prison while his lawyer participated in the courtroom.

Before the presentation of evidence, the Department announced it was abandoning its request for termination and proceeding instead on its alternate request that Grandmother be appointed Ivy's permanent managing conservator. All parties stated they had no objection.

The Department presented testimony from Father, Grandmother, and caseworker Jazmine Greene. Its documentary evidence, all admitted without objection, included orders signed by the trial court throughout the case and an August 2016 letter from a drug testing facility stating Mother refused to submit to a drug test. Mother testified on her own behalf; she did not call other witnesses or offer

documentary evidence. Neither Father nor Ivy's attorney ad litem called witnesses or offered evidence.

### 1. Agreement between Father and the Department about conservatorship

Father and the Department had reached an agreement regarding Ivy's conservatorship. He testified to the terms of the agreement:

- Grandmother would be Ivy's managing conservator.

- Mother and Father would be Ivy's possessory conservators.

- All visitations between Ivy and a parent would be supervised by Grandmother. If the parent and Grandmother could not agree on the logistics of a particular visit, a third-party agency would coordinate.

- Father would pay child support beginning 90 days after his release from prison.

Father believed naming Grandmother as Ivy's managing conservator was in Ivy's best interest, as did Grandmother.

Mother did not agree to those terms. She wanted Ivy to be returned to her care.

### 2. Evidence about Mother

According to Greene, the Department's primary concern about Ivy's safety was Mother's mental health and emotional instability. Greene worried Mother could not manage Ivy's or her own behavior.

Greene testified Mother had been diagnosed with a mood disorder in a psychiatric evaluation but was not addressing it, despite being recommended treatment and referred to a provider. In fact, Greene reported, Mother denied having a mood disorder.

Mother disagreed. She testified she never received referrals or follow-up

treatment information. Nevertheless, she said, she was currently in therapy.

Greene described several events to illustrate her concerns. After this lawsuit began, a family group meeting was held for which Mother was permitted to attend by telephone. Mother allegedly began "yelling, cursing, saying that this meeting was about her and that we needed to wait. . . ." Department personnel cautioned Mother to stop speaking in that way, but she did not and the phone call was terminated. Later, during a visit with Ivy, Mother asked Greene why the permanency goal for Ivy was relative conservatorship. Greene testified she "explained to her because we removed the child based on your mental health and [] you're not addressing." Mother reportedly "stormed out of the visitation room." Greene's supervisor got involved, and Mother told both Greene and the supervisor, "I don't want to hear nothing you or her have to say, both of you are stupid and you don't know your damn job." Trouble arose at another visitation, which was scheduled for 8:30 a.m. Mother texted Greene at 8:44 saying, according to Greene, "I will be here at 9:30 and I expect for my child to be present at 9:30." When Mother arrived, she reportedly used racial slurs to a security guard. She was instructed to leave the premises and warned the police would be called if she did not leave. At another visit, Greene heard "shuffling" of chairs and believed Mother threw, kicked, or pushed the chair. Ivy was with Mother at the time. More recently, Mother had referred to Ivy as "little turd" and "little shit" on several occasions. When Greene asked her not to speak of Ivy in that manner, Mother told her, "This is my child; I can call her what I want." Outbursts like the ones described were "pretty frequent," according to Greene. She estimated Ivy saw three or four such episodes in the two months before trial.

Mother did not dispute any of the events Greene recounted. She testified she started therapy two weeks before trial and was in "ongoing therapy in place of medication." She said her therapist performed a psychological evaluation but did not

5

mention any mood disorder. She also said the therapist had not diagnosed Mother or offered her a prognosis.

Mother was previously prescribed "medication to make me happy" and believed one such medication was Prozac. However, she electively discontinued medication about a year before trial. During the year between stopping medication and beginning therapy, she admitted, Mother received no mental health treatment.

### 3. Evidence about Ivy

Ivy was two years old at the time of trial. Both Greene and Grandmother testified Ivy was doing very well. Greene agreed Grandmother was meeting all of Ivy's physical and emotional needs. She believed it would be in Ivy's best interest for Grandmother to be named Ivy's managing conservator. The Department's long-term permanency goal for Ivy was relative conservatorship.

By contrast, Greene believed naming Mother as Ivy's managing conservator would be detrimental to Ivy's emotional, physical, and mental development, largely due to Ivy's young age. Greene testified she believed Mother could be a possessory conservator but should not be Ivy's managing conservator, explaining Ivy could not defend herself, make a phone call, or reach out for help.

Grandmother agreed Ivy's visits with Mother should be supervised. She said supervision was necessary due to Mother's previous incidents with the Department.

### 4. Trial court's findings

The trial court made findings including the following:

- Appointment of a parent or both parents as managing conservator would not be in Ivy's best interest because the appointment would "significantly impair [her] physical health or emotional development."

- Grandmother was informed of the rights and duties as a non-parent sole managing conservator.

6

- Appointment of Mother and Father as possessory conservators of Ivy would be in Ivy's best interest, and the restrictions placed on their possession and access do not exceed those needed to protect Ivy.

Based on those findings, the trial court appointed Grandmother as Ivy's sole managing conservator and named Mother and Father as possessory conservators. It ordered:

> [A]ll visitation between [Ivy] and [Mother] shall be supervised by the managing conservator at all times and places as mutually agreed. Failing agreement, visitation shall be supervised in accordance with the Guardians of Hope Program.

The trial court further ordered Mother to pay monthly child support beginning August 1, 2017.

### D.    Motion for new trial

Mother timely filed a motion for new trial through her newly-appointed appellate counsel. At the hearing on her motion, she offered seven exhibits:

1.    a high school diploma dated May 26, 2017;

2.    a certificate of completion of six individual counseling sessions dated March 30, 2017;

3.    identification cards for an auto insurance policy in Mother's name dated May 4, 2017;

4.    an apartment lease in Mother's name dated June 2, 2017;

5.    three paystubs dated September 21, October 5, and October 19, 2017;

6.    receipts for six money orders said to demonstrate Mother paid rent on June 2, July 13, August 14, September 21, and October 9, 2017; and

7.    two emails from Entergy Texas confirming Mother paid her utility bills on September 21 and October 16, 2017.

The Department objected to Mother's evidence on several grounds. First, it

said it did not receive notice that evidence would be reopened at the hearing on Mother's motion for new trial. Second, the Department asserted the evidence was not new because "the information . . . was readily available at the time of trial." Third, the exhibits were unauthenticated and inadmissible because they did not satisfy the business-records exception to the hearsay rule. Mother's lawyer responded he did not know if the evidence was readily available because he did not represent Mother at trial. He said he would lay the predicate for admission by asking Mother "some questions regarding . . . what courses she has taken and what she's done to show the Court that she is not a danger to the emotional and physical well-being of her daughter." Counsel also contended the evidence should be admitted via a motion for new trial rather than a motion regarding ineffective assistance of counsel:

> I believe it's more expeditious to attempt to have this evidence admitted now than having to possibly request that . . . it be admitted in a hearing on . . . an ineffective assistance of counsel motion.

The trial court admitted all seven exhibits over the Department's objection.

Mother testified she began working at Panera Bread in February 2017, earned her high school diploma in May 2017, and leased her own apartment in June 2017. She paid the rent and utility bill for her apartment. She had a car at the time of trial and had since gotten a different car. She carried insurance for each car.

As part of this case, Mother said, she was required to and did complete individual counseling and parenting classes. She offered her certificate of completion for counseling, but neither that certificate nor any other exhibit indicates whether she completed parenting classes.

Mother last lived with Father more than a year before trial. She said he was no longer in her life.

Mother testified she had not visited Ivy. She said Grandmother would not agree to meet with her and they have a "chaotic relationship." As a result, visits had to be arranged through the "Safe Program," and Mother asserted she could not afford the fees charged by the "Safe Program."

The Department elected not to cross-examine Mother, instead standing on its objection to the admission of any evidence without proper notice.

The trial court denied Mother's motion for new trial.

## ANALYSIS

Mother raises two issues on appeal. First, she contends the trial court abused its discretion by awarding Grandmother sole managing conservatorship. Second, she contends the court abused its discretion by placing "arbitrary and unreasonable restrictions on Mother's right to possession of and access to Ivy." She does not raise an issue about the denial of her motion for new trial.

## I.    Burden of proof and standards of review

A court's primary consideration in any conservatorship case "shall always be the best interest of the child." Tex. Fam. Code Ann. § 153.002 (West 2014). Texas courts employ the "parental presumption"—that is, they presume a child's best interest is served by remaining with the child's natural parent. *Id.* § 153.131(a) (West 2014); *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990). The trial court is required to appoint the parents as joint managing conservators unless evidence is presented to rebut the parental presumption. Tex. Fam. Code Ann. § 153.131(b). The party seeking appointment of a non-parent as managing conservator bears the burden to rebut the parental presumption, which can be accomplished in either of two ways: (1) a showing that appointment of one or both parents as managing conservator would significantly impair the child's health or development; or (2) a finding of

9

family violence. *Id.*; *In re K.S.*, 492 S.W.3d 419, 427 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Trial courts have wide discretion with respect to custody, control, possession, support, and visitation matters. *K.S.*, 492 S.W.3d at 426; *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). As one court of appeals observed long ago, deference to the trial court is critical in child custody cases due to the trial court's unique position:

> [T]he question of a minor child's custody in such cases is addressed to the sound discretion of the trial court, who faces the parties and the witnesses, observes their demeanors and personalities, and feels the forces, powers and influences that cannot be discerned by merely reading the record. [The judge] is therefore in a better position to analyze the facts, weigh the virtues of the parties, and determine what will be for the best interests of the minor child.

*Thompson v. Haney*, 191 S.W.2d 491, 493 (Tex. Civ. App.—Amarillo 1945, no writ).

We review managing conservatorship orders for an abuse of discretion. *Id.*; *In re R.T.K.*, 324 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). A court acts within its discretion as long as there is "some evidence of a substantive and probative character" to support its decision. *K.S.*, 492 S.W.3d at 426. That discretion includes basing a decision on conflicting evidence. *See In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.) (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998)). A court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to guiding principles. *Id.*; *R.T.K.*, 324 S.W.3d at 899. In this context, legal and factual sufficiency challenges are not independent grounds of error; rather, they are factors to be considered in determining whether the trial court abused its discretion. *K.S.*, 492 S.W.3d at 426.

## II. Appointment of Grandmother as sole managing conservator

Mother does not challenge the trial court's appointment of Grandmother, as opposed to another non-parent, as managing conservator. She challenges only the finding that the parental presumption of section 153.131(a) of the Family Code had been rebutted, contending "The evidence adduced at trial totally fails to support the finding that appointing [Mother] as [Ivy's] sole managing conservator would significantly impair the child's physical or emotional development." Accordingly, we, too, limit our discussion to the evidence regarding the parental presumption.

### A. Evidence admitted at trial

The majority of the evidence at trial concerned Mother's mental health and stability. A parent's mental illness alone does not necessarily demonstrate that a child's physical health or emotional development will be significantly impaired by parental custody. *In re L.D.F.*, 445 S.W.3d 823, 831 (Tex. App.—El Paso 2014, no pet.). Untreated mental illness, however, can endanger a child, and accordingly is a factor the court may consider. *See id.* (considering father's diagnosis of bipolar disorder and his five hospitalizations in connection with that disorder); *see also In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (considering parent's persistent and untreated mental illness as evidence of endangerment for purposes of termination of parental rights); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (considering parent's mental health and noncompliance with medication schedule as factors in endangering child for purposes of termination of parental rights).

Greene testified Mother was diagnosed with a mood disorder. Mother testified she was previously prescribed "medication to make [her] happy," including Prozac, but she elected to stop taking the medication about a year before trial began. Just two weeks before trial, Mother began therapy "in place of medication."

11

Whether caused by her mental illness or not, Mother's behavior during meetings with the Department and visits with Ivy troubled Greene. Greene recounted four such incidents, each of which was marked by Mother's abusive language or uncontrolled anger. Greene estimated Ivy saw three or four such episodes in the two months before trial. Mother did not dispute any of these incidents.

The trial court heard testimony about Mother's past behavior and decisions regarding her mental health and about her recent counseling. In considering Ivy's best interest, the court was free to use Mother's past conduct to measure her likely future conduct. *See In re J.D.*, 436 S.W.3d 105, 119 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

## B. Evidence admitted at hearing on motion for new trial

Mother does not raise an issue on appeal complaining of the trial court's denial of her motion for new trial. Rather, she contends the evidence admitted at the hearing on her motion for new trial demonstrates she is not a danger to Ivy.

The new-trial evidence was not before the trial court when it signed the judgment. Therefore, we will not consider it on appeal of that judgment. *See McMahan v. Greenwood*, 108 S.W.3d 467, 482–83 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (evidence attached to appellant's motion for new trial was not before trial court when it granted summary judgment, so court of appeals would not consider evidence in appeal from summary judgment).

Even if Mother's discussion of the new-trial evidence in her brief can be construed as a challenge to the denial of her motion for new trial, the challenge would lack merit. A party seeking a new trial on grounds of newly-discovered evidence must demonstrate to the trial court that (1) the evidence has come to its knowledge since the trial; (2) its failure to discover the evidence sooner was not due to lack of diligence; (3) the evidence is not cumulative; and (4) the evidence is so

material it would probably produce a different result if a new trial were granted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *In re C.Y.C.*, No. 14-11-00341-CV, 2012 WL 3223674, at \*19 (Tex. App.—Houston [14th Dist.] Aug. 9, 2012, pet. denied) (mem. op.).[2] In child-custody matters, it can be error to refuse to grant a motion for new trial based on newly-discovered evidence, but only if that evidence "strongly shows that the original custody order would have a seriously adverse effect on the interest and welfare of the children, and that presentation of such evidence at another trial would probably change the result." *C. v. C.*, 534 S.W.2d 359, 362 (Tex. Civ. App.—Dallas 1976, writ dism'd w.o.j.).

Mother did not attempt to make the showing required for a new trial to be granted on newly-discovered evidence. Her lawyer said only that he did not know if the evidence was readily available at trial because he did not represent her. The lawyer made that statement as a responsive argument, not as sworn testimony.

Nor does the new-trial evidence "strongly show" that the decree appointing Grandmother as Ivy's sole managing conservator would have a "seriously adverse effect" on Ivy's interest and welfare. *C. v. C.*, 534 S.W.2d at 362. The focus of the trial was on Mother's mental health. The certificate of completion of individual counseling is the only new-trial evidence relevant to Mother's mental health. But the certificate merely confirms Mother's testimony at trial that she was seeing a counselor. The other new-trial evidence is relevant to Mother's ability to provide for Ivy, but that ability was not disputed at trial. We cannot say that presentation of the

---

2 Newly-discovered evidence must be distinguished from new evidence, which means evidence that came into being after the judgment was signed. Evidence not in existence prior to judgment cannot form the basis of a new trial. *C.Y.C.*, 2012 WL 3223674, at \*19 (citing *In re S.M.V.*, 287 S.W.3d 435, 451 (Tex. App.—Dallas 2009, no pet.). The judgment in this case was signed September 8, 2017, so evidence about events after that date is new, not newly-discovered, and cannot support a new trial. That evidence includes all of Mother's paystubs, receipts for rent paid on all dates other than June 2, 2017, and the emails confirming Mother's utility payments.

new-trial evidence at trial would probably have changed the result of the trial. *Id.*

## C. Conclusion on Grandmother's appointment as sole managing conservator

We conclude the Department satisfied its burden to rebut the presumption that Ivy's best interest would be served by remaining with Mother. Mother admitted she left her mental illness untreated for a year. Her admission, coupled with Greene's testimony, supports a finding that appointment of Mother as a managing conservator would significantly impair Ivy's health or development. *See* Tex. Fam. Code Ann. § 153.131(a). We overrule Mother's first issue.

## III. Supervised visitation

Mother's second issue complains of the trial court's imposition of "arbitrary and unreasonable restrictions on Mother's right to possession of and access to Ivy." The only restriction discussed in her brief, and the only restriction we observe in the decree, is that her visits with Ivy must be supervised.

A trial court may place conditions on a parent's access to a child, such as supervised visitation, when it is in the child's best interest. *In re A.G.*, 531 S.W.3d 329, 333 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Restrictions or limitations imposed on a parent's right of possession or access may not exceed those necessary to protect the best interest of the child. Tex. Fam. Code Ann. § 153.193 (West 2014); *A.G.*, 531 S.W.3d at 333.

As discussed, the trial court found that appointing Mother as managing conservator would significantly impair Ivy's physical health and emotional development. It is against that backdrop that the trial court was charged with crafting an order that would allow Mother access to Ivy while protecting Ivy's best interest. *See In re B.J.W.S.*, No. 14-08-01154-CV, 2010 WL 4396291, at *8 (Tex. App.— Houston [14th Dist.] Nov. 4, 2010, no pet.) (mem. op.) (evidence supporting rebuttal

of parental presumption for purposes of managing conservatorship, including father's mental illness, also supported trial court's restrictions on father's access to child as possessory conservator, including requirement that visits be supervised).

A parent's mental illness is a factor to be considered in determining whether to impose restrictions on that parent's right of access to the child. *See In re Marriage of Swim*, 291 S.W.3d 500, 506 n.7 (Tex. App.—Amarillo 2009, no pet.); *B.J.W.S.*, 2010 WL 4396291, at *8 (father's untreated mental illness, among other things, supported supervised visitation restriction). The evidence shows Mother has a history of volatile behavior, both in and out of Ivy's presence. That volatility may be related to her mood disorder, a disorder for which Mother voluntarily discontinued treatment for roughly one year. We cannot say the trial court abused its discretion in requiring Mother's visits with Ivy to be supervised.

Mother contends no evidence supports the trial court's decision to deviate from the standard possession order, the requirements of which are codified in chapter 153, subchapter F of the Family Code. Tex. Fam. Code Ann. § 153.3101–153.317 (West 2014 & Supp. 2017). She asserts the Department did not rebut the statutory presumption of section 153.252 that the standard possession order (1) provides reasonable minimum possession of a child for a parent named as a possessory conservator, and (2) is in the child's best interest. *See id.* § 153.252.

The standard possession order does not apply in this case, because Ivy was younger than three at the time of trial. Tex. Fam. Code Ann. § 153.251(d) (West 2014) ("The standard possession order is designed to apply to a child three years of age or older.") Mother's access to and possession of Ivy is governed by section 153.254, which directs the trial court to "render an order appropriate under the circumstances for possession of a child less than three years of age." *Id.* § 153.254(a) (West 2014 & Supp. 2017); *In re Q.D.T.*, No. 14-09-00696-CV, 2010 WL 4366125,

at *7-8 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.) (mem. op.).

We overrule Mother's second issue.

**CONCLUSION**

We affirm the trial court's judgment.

/s/    Ken Wise
          Justice

Panel consists of Justices Boyce, Donovan, and Wise.