Opinion filed March 13, 2025



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00048-CV

_____

## IN THE INTEREST OF K.R.S., A CHILD

**On Appeal from the 132nd District Court**
**Scurry County, Texas**
**Trial Court Cause No. 27400**

### MEMORANDUM OPINION

This appeal originates from the trial court's final order in a suit affecting the parent-child relationship (SAPCR), wherein it appointed M.H. (Grandmother) as the sole managing conservator of K.R.S. and appointed M.S. and T.M. as possessory conservators. Only M.S. (Mother) has appealed. In a single issue, Mother asserts that the trial court abused its discretion when it awarded sole managing conservatorship to Grandmother because the evidence is legally and factually insufficient to overcome the parental presumption. We affirm.

## I. *Factual Background*

T.M. (Father) and Mother are the parents of K.R.S., who was almost five years old at the time of the final hearing; Grandmother is the child's paternal grandmother. K.R.S. lived in a travel trailer with Mother and his half-sibling.[1] The Department of Family and Protective Services (the Department) became involved with Mother in March 2022 when she failed a drug test. K.R.S. and his half-sibling were then placed with Mother's sister, but in May 2022, both children began living with Grandmother. That same month, Mother was admitted to a drug rehabilitation facility where she stayed for thirty days.

In August 2022, Mother picked up K.R.S. from Grandmother's home. Grandmother then filed her SAPCR on September 9, 2022, in which she sought to be named the sole managing conservator of K.R.S. After a temporary hearing[2] on September 20, 2022, the trial court signed temporary orders appointing Grandmother sole managing conservator of K.R.S. and Mother and Father possessory conservators. While Father was not allowed any visitation, Mother was permitted supervised visitation with K.R.S. on the first, third, and fifth weekends of the month.

The trial court held a final hearing on June 12, 2023. Father did not appear. Mother testified and admitted that she used methamphetamine in the summer 2022, after completing drug rehabilitation. The record shows that after the temporary hearing, Mother tested positive for cocaine. Mother had a negative drug test on October 13, 2022, as well as in June 2023. Mother acknowledged that she has struggled with her mental health and has expressed suicidal thoughts. Mother was

---

[1]Father is not the biological father of Mother's older child.

[2]Father did not appear at the hearing.

taking prescription medication for her mental health, but she was not receiving counseling.

Mother further testified that she made $10 an hour working in a school cafeteria. She testified that she was receiving unemployment benefits because the school does not pay wages during the summer months when it is not in session. Mother explained that she lived in a travel trailer with her daughter, K.R.S.'s half-sibling. The travel trailer is on a lot that is not equipped with a hookup site for water and electricity. According to Mother, water is supplied to the travel trailer through a tank. When asked, "is there an extension cord running to give you electricity," Mother responded, "I just know that I have electricity."

Mother frequently asked Grandmother for financial assistance because she did not have enough money for food, medical expenses, and to pay bills. Although K.R.S. is her only grandchild, Grandmother financially supported both of Mother's children. Mother opened a debit card in K.R.S.'s name, and she also had a joint banking account with Grandmother.

Mother admitted that she did not exercise her visitation with K.R.S. from October 2022 until December 2022. She explained that at the time she was working at a convenience store, which made it difficult for her to visit on the weekends, and that she did not have transportation. After she changed jobs and began working at the school cafeteria, Mother began visitation with K.R.S. Although Mother testified that she played and interacted with K.R.S. during visitation, Grandmother introduced videos and photographs of Mother sleeping during visitation.

Mother and Father had an "on and off" relationship that was sometimes violent. On one occasion, Father hit Mother while she was holding K.R.S. Mother testified that it was possible Father committed other acts of violence in the presence

of the children.  Mother acknowledged that she lacked the ability to protect her children in regard to Father.

Mother testified that she is now financially stable and able to care for her children and that she no longer asks Grandmother for financial assistance.  Mother said that she has a working vehicle, a stable job, and is on the waiting list for Section 8 housing.  She said she has a good support system and that she is able to meet K.R.S.'s emotional needs.  Mother noted that she is concerned about K.R.S. being in Grandmother's care because (1) she believes Grandmother allows Father to see K.R.S., (2) Grandmother has large dogs that could be violent, and (3) Grandmother has an adult son living with her who uses marihuana.

Grandmother testified that when K.R.S. came into her care, his medical and dental needs had been neglected.  Grandmother stated that K.R.S. is now up to date on all his vaccinations, and he had extensive dental work.  Grandmother enrolled K.R.S. in counseling, and she stated that he needs to continue his therapy.  Grandmother explained that prior to being in her care, K.R.S. was not on a schedule, but now he is healthy and happy.

Grandmother further testified that it is not in K.R.S.'s best interest to have contact with Father and that she does not allow Father access to K.R.S.  Grandmother expressed concerns if K.R.S. returns to Mother because (1) Mother neglects K.R.S. when she is overwhelmed, (2) Mother uses drugs when she is stressed, (3) Mother's living conditions have not changed, (4) Mother is not financially stable, (5) Mother does not have a stable living environment, and (6) Mother continues to have a relationship with Father.

Paola Fusilier testified that she has been K.R.S.'s counselor since December 2022.  She diagnosed K.R.S. with chronic post-traumatic stress disorder.  Fusilier stated that K.R.S. exhibited multiple qualifiers that led to her diagnosis including

(1) witnessing events happening to another person, (2) the presence of one or more intrusion symptoms of traumatic events, (3) recurrent and voluntary distressing memories of the events, (4) recurrent distressing dreams related to the traumatic events, (5) flashbacks, and (6) negative thoughts of fear, guilt, shame, and reduction in the expression of positive emotions. Fusilier testified that K.R.S. told her that Mother had left him alone on multiple occasions and he was unable to find his family. Although he eventually found his family, it was distressing to K.R.S. K.R.S. also conveyed that he felt as if he was not included in things because Mother brought food for his sibling but not for him. According to Fusilier, K.R.S. exhibited "power and control themes" indicating that he feels helpless. Fusilier expressed concern that K.R.S. would be re-exposed to trauma if he returned to Mother.

At the conclusion of the final hearing, the trial court extended the temporary orders and took the matter under advisement. The trial court later signed a final SAPCR order in which it appointed Grandmother sole managing conservator of K.R.S. and Mother and Father possessory conservators. Mother was awarded visitation with K.R.S. conditioned upon her compliance with a hair follicle drug testing order and abstinence from the use of illegal drugs. The trial court's order stated that Mother's possession of K.R.S. would progress through four levels, beginning with supervised visitation and culminating with the standard possession order. Father was denied any visitation with K.R.S. After Mother filed a request, the trial court made findings of fact and conclusions of law.

## II. *Standard of Review*

We review the trial court's conservatorship determination for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re A.M.T.*, 592 S.W.3d 974, 976 (Tex. App.—San Antonio 2019, pet. denied). When an abuse-of-discretion standard applies to a trial court's ruling, and the trial court issues findings of fact and

conclusions of law, as it did here, the "findings of fact and conclusions of law aid us in reviewing the propriety of the [trial court's] ruling[s] by providing us with an explanation for the ruling[s]." *In re B.G.J.*, 702 S.W.3d 886, 897 (Tex. App.—Eastland 2024, no pet.) (quoting *In re M.J.G.*, 248 S.W.3d 753, 761 (Tex. App.—Fort Worth 2008, no pet.)); *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992). A trial court's findings of fact that arise from a SAPCR determination are reviewed for legal and factual sufficiency. *B.G.J.*, 702 S.W.3d at 897; *In re L.A.F.*, 270 S.W.3d 735, 739 (Tex. App.—Dallas 2008, pet. denied).

Under this standard, legal and factual sufficiency are not independent grounds of error but are factors used to determine whether the trial court abused its discretion. *In re M.T.*, No. 11-17-00340-CV, 2019 WL 1291246, at *2 (Tex. App.—Eastland Mar. 21, 2019, no pet.) (mem. op.); *In re K.S.*, 492 S.W.3d 419, 426 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A trial court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to guiding rules and principles. *K.S.*, 492 S.W.3d at 426; *see also J.A.J.*, 243 S.W.3d at 616. "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *K.S.*, 492 S.W.3d at 426. The best interest of the child is always the primary consideration in the determination of managing conservatorship, and the trial court is given wide latitude in determining the best interest of a child. TEX. FAM. CODE ANN. § 153.002 (West 2014); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

### III. *Applicable Law*

The Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000). This fundamental right is recognized in Texas jurisprudence based on the legal

presumption that it is in a child's best interest to be raised by his or her biological parent(s). *In re C.J.C.*, 603 S.W.3d 804, 812 (Tex. 2020) (citing *Taylor v. Meek*, 276 S.W.2d 787, 790 (Tex. 1955)). Further, a fit parent is entitled to the presumption that they act in the best interest of their children. *Id.* at 820. "[S]o long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68–69.

The "fit parent presumption" is "deeply embedded in Texas law as part of the determination of a child's best interest." *C.J.C.*, 603 S.W.3d at 812. Texas has adopted a statutory parental presumption in Section 153.131 of the Family Code, which states:

> (a) Subject to the prohibition in Section 153.004, unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

> (b) It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection.

FAM. § 153.131. This presumption has also been incorporated into the statute that permits grandparents to seek possession of or access to their grandchildren. *See id.* § 153.433(a)(2). Section 153.433(a) provides that a trial court may grant to a grandparent reasonable possession of or access to his or her grandchild if:

(1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;

(2) the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would *significantly* impair the child's physical health or emotional well-being; and

(3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:

(A) has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;

(B) has been found by a court to be incompetent;

(C) is dead; or

(D) does not have actual or court-ordered possession of or access to the child.

*Id.* § 153.433(a) (emphasis added).

## IV. *Discussion*

As an initial matter, Mother challenges certain findings of fact made by the trial court that she argues have no support in the record. Citing *May v. May*, Mother contends that in the complained-of findings of fact, the trial court impermissibly relied on recollections from the temporary hearing. 829 S.W.2d 373, 376 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). In *May*, the court held that the trial court may not judicially notice testimony taken at a prior hearing in the same case with respect to temporary orders unless such testimony is admitted into evidence at a subsequent hearing. *Id.* We will limit our review to only the evidence admitted at the final hearing. *See In re X.M.B.E.*, No. 11-24-00237-CV, 2025 WL 409039, at *3 n.5 (Tex. App.—Eastland Feb. 6, 2025, no pet. h.).

When both a parent and a nonparent seek managing conservatorship of a child, the nonparent must offer evidence of specific actions or omissions by the parent that demonstrate that an award of custody to the parent would result in physical or emotional harm to the child. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). While an order terminating parental rights must be supported by clear and convincing evidence, "a finding that appointment of a parent as managing conservator would significantly impair the child's physical health or emotional development is governed by a preponderance-of-the-evidence standard." *J.A.J.*, 243 S.W.3d at 616.

Mother argues that the trial court's finding in its final SAPCR order of "probable significant impairment" to K.R.S. is based on "nothing more than surmise and is against the great weight and preponderance of the evidence." The trial court heard testimony that K.R.S. tested positive for drugs when he was in Mother's care. As such, the trial court could reasonably conclude that by exposing K.R.S. to drugs, Mother's actions resulted in physical harm to K.R.S. *See Lewelling*, 796 S.W.2d at 167.

"Acts or omissions that constitute significant impairment include, but are not limited to, physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior by the parent." *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet). Mother admitted to using drugs after completing drug rehabilitation and less than a year before the final hearing. She tested positive for cocaine after the temporary hearing. Despite this, Mother contends that her "misdeeds" date back to 2022 or before then. However, in reviewing evidence of the parent's conduct, the relevant and material time to consider is the present, not the past. *In re D.C.N.*, No. 04-23-00617-CV, 2023 WL 8793141, at *3 (Tex. App.—San Antonio Dec. 20, 2023, no pet.) (mem. op.).

Mother argues that the trial court should not consider her past drug use to support a finding of present unfitness. Although Mother had negative drug tests prior to the final hearing, there was testimony that Mother had a pattern of using drugs when she was stressed. Evidence of the parent's recent, deliberate past misconduct may support a finding that a parent is unfit, but evidence of past misconduct alone may not be sufficient to show present unfitness. *Id.* Because K.R.S. tested positive for drugs while in Mother's care and Mother admitted to using drugs less than a year before the final hearing, the trial court could logically and reasonably infer that her recent past behavior significantly impaired K.R.S.'s emotional and physical development. *See May*, 829 S.W.2d at 377–78.

In making its conservatorship determination, a trial court may consider evidence of "parental irresponsibility . . . bad judgment, child abandonment, and an unstable, disorganized, and chaotic lifestyle that has put and will continue to put the child at risk." *D.C.N.*, 2023 WL 8793141, at *2 (quoting *S.T.*, 508 S.W.3d at 492). Evidence was presented that K.R.S. was exposed to domestic violence. Mother acknowledged that she lacked the ability to protect her children in regard to Father. K.R.S. was diagnosed with chronic post-traumatic stress disorder based upon witnessing traumatic events. K.R.S further expressed being traumatized from being left alone by Mother and not being able to find his family. K.R.S recalled Mother providing food for his sibling but not for him. His counselor testified that she was concerned K.R.S. would be traumatized if he returned to Mother's care. This evidence supports the trial court's determination that appointing Mother as managing conservator would significantly impair K.R.S.'s emotional health. *See S.T.*, 508 S.W.3d at 492; *M.T.*, 2019 WL 1291246, at *3–4. Moreover, the trial court could also consider Mother's suicidal thoughts and mental health concerns in finding

significant impairment. *See S.T.*, 508 S.W.3d at 492; *M.T.*, 2019 WL 1291246, at *2–3.

We conclude that the evidence presented at the final hearing supports the trial court's determination that appointing Mother as the managing conservator would significantly impair K.R.S.'s physical health or emotional development. Thus, the trial court did not abuse its discretion when it designated Grandmother as sole managing conservator of K.R.S. Accordingly, we overrule Mother's sole issue on appeal.

## V. *This Court's Ruling*

We affirm the trial court's final order.


W. STACY TROTTER
JUSTICE


March 13, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.