

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-20-00189-CV
_____

IN THE INTEREST OF E.G., A CHILD

On Appeal from the County Court at Law Number 1
Randall County, Texas
Trial Court No. 76,574-L1; Honorable Jack Graham, Presiding

December 31, 2020

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

## MEMORANDUM OPINION

Appellant, A.G., appeals from an order terminating her parental rights to a child, E.G.[1]  In two issues, she argues (1) the associate judge of the trial court erred by failing to return this case to the referring court for trial on the merits following a timely objection by the Texas Department of Family and Protective Services pursuant to Family Code section 201.005 and (2) the trial court erred in determining the evidence was sufficient

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2019); TEX. R. APP. P. 9.8(b).  The parental rights of E.G.'s father were also terminated in this proceeding.  However, he is not a party to this appeal.

under a clear and convincing standard to show termination of A.G.'s rights was in E.G.'s best interest. We will affirm.

## BACKGROUND

The Department filed suit seeking to terminate A.G.'s parental rights to E.G., a child four years old by the time of the hearing. In its original petition, the Department averred, "Petitioner objects to the assignment of this matter to an associate judge for a trial on the merits or presiding at a jury trial." Notwithstanding this objection, the parties subsequently tried the case before an associate judge. *See* TEX. FAM. CODE ANN. §§ 201.005 (allowing parental termination cases to be referred to an associate judge); 201.007 (establishing the powers of an associate judge).

A police officer with the Amarillo Police Department testified he received a call in August 2019 regarding a stolen pickup. The owner identified A.G. as the person who stole his pickup and that three-year-old E.G. was present at the time of the theft. At that time, the officer placed A.G. and E.G. in his patrol car with the window down. A.G. got out of the patrol car through the window, leaving E.G. in the patrol car, and tried to get away on foot; however, A.G. was subsequently apprehended. The arresting officer noted A.G.'s erratic behavior and believed she was under the influence of narcotics. A.G. then admitted to the officer she had used methamphetamine. The officer further testified he believed A.G. admitted she had stolen the pickup and another vehicle.

A Randall County Sheriff's deputy testified to an earlier interaction in March 2015 with A.G and the father of the child. He told the court he was responding to a report of an assault with a gun. During this encounter, A.G. told the deputy E.G.'s father had

2

assaulted her. He observed that she had suffered several wounds and had blood in her hair. The father also had lacerations and, according to the deputy, smelled like alcohol and vomit. The father was taken to the hospital to receive stitches. According to the father, A.G. "was the aggressor in the argument." However, the deputy noted that the father was categorized as "assaultive" in their law enforcement database.

The deputy also related another instance in which he was involved with A.G. and the father. In early July 2017, the deputy responded to a call regarding an animal. While he was driving, he saw a female standing next to a four-door black car. She waved the deputy down. He identified the female as A.G. from his previous interactions with her. He also identified the father. A.G. told the deputy she waved him down because she and the father had gotten into an argument while driving. They had been drinking at a park prior to the argument. As they were driving, A.G. told the father to get out of the car. E.G. was in the vehicle with her parents at the time. The deputy noted the father had "a bloody nose." A.G. was taken to the hospital for her injuries. The deputy also testified A.G. and the father had a blood alcohol concentration that was "almost double the legal limit." Another deputy testified A.G. was "aggressive and argumentative" during his interaction with her. He said A.G. was arrested for assault family violence as a result of that incident.

A Department caseworker testified she worked with the family following A.G.'s arrest in 2017. During that time period, both A.G. and the father provided positive initial drug screens. A.G. completed the family-based services in October 2018 and the case was closed. Another employee of the Department, an investigator, testified she became involved with the family after A.G. was again arrested in 2019. While A.G. was in jail, E.G. was placed in the custody of A.G.'s grandfather. The Department subsequently

3

sought temporary managing conservatorship of E.G. when A.G.'s grandfather was no longer able to care for the child.[2] At that time, none of A.G.'s suggested placements were willing to care for E.G. Therefore, E.G. was placed with maternal cousins and was "doing wonderfully." E.G. was bonded to the parents and other children in the home and the parents wished to adopt E.G. in the event A.G.'s parental rights were terminated.

Another Department caseworker testified she began to work with A.G. in August 2019. A.G. told her she had mental health issues, primarily depression, that caused her to engage in criminal behavior. The caseworker then prepared a service plan for A.G., but she refused to sign it. A.G. remained incarcerated throughout the pendency of the Department's case, causing her ability to complete the necessary services to be limited, although she did complete a parenting class while incarcerated.[3] The mother admitted her crime and admitted she pleaded guilty and would possibly remain incarcerated for three years. She also failed to indicate any plan of care for E.G. while she was incarcerated. The caseworker opined that the mother was not able to provide for E.G.'s emotional or physical needs and could not provide a safe home for E.G.

An investigator with the Department testified she visited the home where A.G. had been living with E.G. prior to A.G.'s 2019 arrest. She also went to A.G.'s home four days after she had been arrested. She described the home as being "very chaotic. There was multiple food and spoiled milk out on counters. There was stuff piled in the sink with the sink with nasty water in it. There was clothes everywhere on the floor. You could hardly

---

[2] The grandfather was also caring for A.G.'s two older children.

[3] The record indicates A.G.'s ability to complete her services was also hindered by the COVID-19 pandemic.

4

see the floor itself. There was rotten food with mold on it. It—it did not look like a safe living condition." The investigator noted also there "was a broken glass on the kitchen floor, all throughout most of the kitchen."

In addition, A.G. testified on her own behalf. She indicated her desire was that her parental rights not be terminated and that E.G. remain in her current placement while she was incarcerated. She also told the court she did not want her rights to E.G. to be terminated because "I love my kid. I can take care of her. And I'm going to do as good as I can do." When asked whether she believed it would hurt E.G. if her rights were terminated, A.G. said she believed it would "[b]ecause she's my daughter." A.G. did not elaborate further.

The attorney ad litem for E.G. recommended termination of A.G.'s parental rights, stating, "I do believe it to be in the child's best interest that both the mother and the alleged father's parental rights be terminated." The associate judge then announced his findings and terminated A.G.'s parental rights to E.G.

### ANALYSIS

### STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child are not sacrificed merely to

5

preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002); *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). The Due Process Clause of the United States Constitution and the Texas Family Code require an application of the heightened standard of "clear and convincing evidence" in cases involving involuntary termination of parental rights. *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019); TEX. FAMILY CODE ANN. § 161.206(a) (West 2014).

A legal-sufficiency review of a finding that must be proven by clear and convincing evidence requires the reviewing court to review the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could form a firm belief or conviction that the finding was true. *In re Stoddard*, No. 19-0561, 2020 Tex. LEXIS 1154, at *16, (Tex. Dec. 18, 2020). Therefore, in a legal sufficiency challenge, we credit evidence that supports the verdict if a reasonable fact finder could have done so and disregard contrary evidence unless a reasonable fact finder could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, as the reviewing court we should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. Therefore, in cases requiring clear and convincing evidence, evidence that does no more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true*. Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter to be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

6

A factual sufficiency review is premised on consideration of the entire record. *In re Stoddard*, 2020 Tex. LEXIS 1154, at *16-17. In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). In such a review, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. In doing so, we consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction that the finding was true, then the evidence is factually insufficient. *Id.*

### ISSUE ONE—ERROR PURSUANT TO OBJECTION UNDER SECTION 201.005

Through her first issue, A.G. argues the associate judge erred by failing to return this case to the referring court for trial on the merits after the Department timely filed an objection pursuant to Family Code section 201.005.

Section 201.005 provides as follows:

(a) Except as provided by this section, a judge of a court may refer to an associate judge any aspect of a suit over which the court has jurisdiction under this title, Title 1, Chapter 45, or Title 4, including any matter ancillary to the suit.

(b) Unless a party files a written objection to the associate judge hearing a trial on the merits, the judge may refer the trial to the associate judge. A trial on the merits is any final adjudication from which an appeal may be taken to a court of appeals.

(c) A party must file an objection to an associate judge hearing a trial on the merits or presiding at a jury trial not later than the 10th day after the date

7

the party receives notice that the associate judge will hear the trial. If an objection is filed, the referring court shall hear the trial on the merits or preside at a jury trial.

(d) The requirements of Subsections (b) and (c) shall apply whenever a judge has authority to refer the trial of a suit under this title, Title 1, Chapter 45, or Title 4 to an associate judge, master, or other assistant judge regardless of whether the assistant judge is appointed under this subchapter.

TEX. FAM. CODE ANN. § 201.005 (West 2015).

Here, the Department included in its *Original Petition* an objection to the assignment of this matter to an associate judge. According to A.G.'s appellate brief, she relied on the Department's objection and asserts this matter was required to be heard by the referring court. Because it was not, A.G. argues she is entitled to a new trial on the merits before the referring court. However, we find the record indicates this issue is not properly before us.

Judicial economy requires that a trial court have the opportunity to correct an error before an appeal proceeds. *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999). Therefore, as a prerequisite to the presentment of a complaint for appellate review, the record must reflect that the complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1. Here, the record shows that neither party urged, mentioned, or otherwise brought to the attention of the trial court the objection contained in the pleadings at any time prior to or at the time of the final hearing. Further, A.G. did not file a motion for new trial raising the issue of the failure to refer the matter back to the referring court. As such, A.G. has failed to preserve this issue for our review. *In re B.L.D. and B.R.D.*, 113 S.W.3d 340, 350 (Tex. 2003); *In re B.W.*, 99 S.W.3d 757, 760 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Patir v. MFC Int'l. Corp.*, 60 S.W.3d 355, 357

(Tex. App.—Houston [1st Dist.] 2001, no pet.) (requiring objection or otherwise bringing to attention of the trial court an error that could have been cured if the trial court had been given the opportunity to do so).  We thus resolve this issue against A.G.

### ISSUE TWO—SUFFICIENCY OF THE EVIDENCE TO SUPPORT BEST INTEREST FINDING

Via her second issue, A.G. argues the evidence was insufficient to support the trial court's finding that termination of her parental rights to E.G. was in the child's best interest.

Texas Family Code section 161.001(b) permits involuntary termination of parental rights if clear and convincing evidence supports that a parent engaged in one or more of the twenty-one enumerated grounds for termination and that termination is in the best interest of the child.  *In re N.G.*, 577 S.W.3d at 232 (citation omitted).  In her brief, A.G. challenges only the court's finding regarding the sufficiency of the evidence to support the conclusion that it was in E.G.'s best interest to terminate her parental rights.  She does not challenge the court's findings as to the predicate grounds.

Only one predicate ground for termination is needed for the court to affirm termination and an unchallenged finding of a predicate violation is binding and will support the trial court's judgment.  *In re S.L.*, 421 S.W.3d 34, 37 (Tex. App.—Waco 2013, no pet.).  Thus, A.G.'s failure to challenge the sufficiency of the evidence to support the trial court's findings on any of the predicate grounds waived any complaint regarding the sufficiency of the evidence to support that predicate ground.  *In re T.A.P.,* No. 04-17-00137-CV, 2017 Tex. App. LEXIS 6636, at *7 (Tex. App.—San Antonio July 19, 2017, no pet.) (mem. op.); *In re C.P.V.Y.*, 315 S.W.3d 260, 269 (Tex. App.—Beaumont 2010, no pet.).  Therefore, the unchallenged predicate grounds support the termination of A.G.'s parental rights, and

9

we turn to our analysis of the sufficiency of the evidence supporting the court's best interest finding.

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.— San Antonio 2013, pet. denied).

The record indicates A.G. has a significant history of domestic violence, drug and alcohol use, untreated mental health issues, and criminal conduct. Most tellingly, the record indicates E.G. was present during at least some of the instances in which A.G. engaged in domestic violence, drug and alcohol use, and criminal behavior. *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's

drug use supports a finding that termination is in best interest of the child); *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (stating domestic violence, even when the child is not the intended victim, supports finding that termination is in the child's best interest). The Department introduced documentary evidence of A.G.'s criminal history that spanned many years and included assault causing bodily injury, driving while intoxicated, assault involving family violence, felony unauthorized use of a vehicle, felony escape while arrested or confined, and burglary of a habitation. The trial court could have seen A.G.'s conduct as providing an unsafe and endangering environment for the child, thereby supporting its finding that termination of A.G.'s parental rights was in E.G.'s best interest. *In re H.D.*, No. 01-12-00007-CV, 2013 Tex. App. LEXIS 5699, at *34 (Tex. App.—Houston [1st Dist.] May 9, 2013, no pet.) (mem. op.) (providing that courts may consider in its determination of best interest the demonstration of lack of adequate parenting skills, including the failure to provide child with safe physical home environment).

E.G. was four years old at the time of trial and rather young to express her desires. However, the record indicates she is doing well and is bonded with her caregivers who plan to adopt her. *See In re D.S.O.*, No. 04-14-00061-CV, 2014 Tex. App. LEXIS 6541, at *19-20 (Tex. App.—San Antonio June 18, 2014, no pet.) (mem. op.) (relying on evidence that child bonded with foster parents as evidence to support trial court's best interest finding); *In re T.D.C.,* 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied) (stability and permanence are paramount in the upbringing of children). In contrast, the record shows A.G. has not demonstrated she has the ability to effectively and safely parent the child once she is released from prison. *In re S.B.*, 207 S.W.3d 877,

887-88 (Tex. App.—Fort Worth 2006, no pet.). The caseworker testified that A.G. had demonstrated a poor pattern of decision-making and has repeatedly put E.G. at risk. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.) (a parent's inability to provide adequate care for the child, lack of parenting skills, poor judgment, and repeated instances of immoral conduct may also be considered when looking at best interest). From the entire record, we find the trial court could have reasonably concluded this evidence showed E.G.'s best interest would be served by terminating A.G.'s parental rights and allowing adoption by E.G.'s caregivers.

A.G. did not challenge the predicate grounds on which termination of her parental rights was based and has consequently conceded those grounds. Evidence supporting those grounds may be considered in determining whether termination of parental rights was in the child's best interest. *In re C.H.*, 89 S.W.3d at 28. As noted, evidence presented at the hearing showed A.G. was involved in serious and repeated domestic violence, had an unsafe home, engaged in substance abuse, engaged in criminal activity that led to incarceration, had previous history with the Department, and had endangered E.G. through her actions. The trial court could have concluded that these circumstances would continue if E.G. was returned to A.G.'s care. *In re J.D.B.*, 435 S.W.3d 452, 468 (Tex. App.—Dallas 2014, no pet.) (fact finder may infer from past conduct endangering child's well-being that similar conduct will recur if the child is returned to the parent's care). *See also Danet v. Bhan*, 436 S.W.3d 793, 797-98 (Tex. 2014) (finding sufficient evidence to support termination from evidence of misconduct in the more distant past, evidence of more recent misconduct, and evidence of the stability of the child's current placement).

On our review of the record, we find the evidence is legally and factually sufficient to support the trial court's finding that termination of A.G.'s parental rights was in E.G.'s best interest. Accordingly, we overrule A.G.'s second issue.

**CONCLUSION**

Having overruled each of A.G.'s issues, we affirm the *Order of Termination.*

Patrick A. Pirtle
Justice