# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-0116

════════════

BRYAN JAMES DANET AND WILLIAM TODD KRANZ , PETITIONERS,

v.

JESSICA BHAN, RESPONDENT

════════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

════════════════════════════════════════════════════════

**PER CURIAM**

This case concerns the custody of a child. After a jury trial, the trial court entered an order appointing the child's foster care providers as the child's sole managing conservators. The court of appeals reversed on no evidence grounds and appointed the child's mother as his sole managing conservator. We find there is some evidence to support the jury's verdict, so we reverse the court of appeals' judgment and remand the case for that court to review the factual sufficiency of the evidence.

On March 31, 2006, the Texas Department of Family and Protective Services (DFPS) removed the child from the custody of his mother, Jessica Bhan, and placed him in the foster care of Bryan Danet and Todd Kranz. The child, who was seven months old at that time, has remained

with Danet and Kranz ever since. The record establishes that they have performed well as foster parents and that the child, who is now eight years old, has bonded with them.

At the trial of this case in August 2010, Bhan testified that on the morning of March 31, 2006, she decided to escape from her abusive boyfriend and take her child with her. The child had previously been diagnosed with "thrush," a yeast infection, which, Bhan explained, caused a severe diaper rash. To treat the thrush, she packed two antibiotics the child's pediatrician had prescribed. Because her boyfriend had hidden her driver's license, Bhan had to "go through half the house" to find it and left the house "messy." She then took the child with her to a bus stop, planning to take a bus to her mother's house in Wisconsin. However, her boyfriend found her at the bus stop, confronted her, and took the child from her. Bhan then called for emergency assistance, and a police officer eventually arrived at the house. Her boyfriend and the child were already at the house. After questioning the couple and observing the living conditions, the police officer took the child away in his patrol car. Bhan explained that because the officer had taken the child away, she did not have time to feed him or apply his thrush medication.

Kranz testified at trial that the child had a "very severe diaper rash" when he was first placed in foster care, and he appeared as if he had been "starving." Although the police told Bhan that she could go pick up her child and continue to Wisconsin, Bhan did not do so. She testified at trial that she was too "hysterical" to go pick him up. Instead, she spent the weekend in a hotel room using cocaine with an ex-inmate she had just met. When she attended a court hearing the following Monday, the court ordered her to submit to a narcotics test, which came back positive. She also submitted an affidavit in which she mistakenly named the boyfriend as the child's father. She

2

believed this to be true at the time, however, the boyfriend was later determined not to be the father. The child was not returned to Bhan at the hearing. After the hearing, Bhan moved to Wisconsin to live with her mother.

In June 2006, DFPS informed Bhan that it intended to terminate her parental rights and arrange for an "unrelated adoption." Bhan then returned to Houston for a second hearing, at which the court ordered her to complete a family service plan. Bhan understood that she could regain custody of the child if she satisfactorily complied with the plan. About a month later, Bhan was arrested for disturbing the peace after fighting with her boyfriend in a parking lot. Later that summer, Bhan returned to live with her abusive boyfriend. She attended parenting courses, underwent a psychological evaluation, and stayed two nights at an "in-patient drug facility," as the family service plan required. After one of her visits with the child, however, Bhan and her boyfriend were both arrested for, and later convicted of, shoplifting. Shortly thereafter, Bhan gave birth to another son, and this same boyfriend seriously assaulted her in the hospital following the birth of that child. At the time of trial in August 2010, this boyfriend was incarcerated.

After DFPS decided not to seek termination of Bhan's parental rights, Danet and Kranz filed this suit in October 2007, seeking appointment as the child's joint managing conservators. Bhan filed a counterclaim asking the court to appoint her as the child's sole managing conservator. In May 2009, the parties agreed to an order appointing Kranz and Danet as temporary managing conservators during the pendency of these court proceedings.

At trial, Kranz testified that Bhan was routinely late for her scheduled appointments and behaved carelessly with her son. He testified that, on one occasion, she was late for a visit at the

Houston Children's Museum, and when she did arrive, she sneaked past the reception desk to avoid paying an entrance fee. On another occasion, Bhan failed to call the child for three weeks because she had "decided to go to New Orleans," where she was eventually stranded.

Danet testified that during Bhan's infrequent visits, the child would "get[ ] very scared and [cry] at night." Although Kranz and Danet encouraged Bhan to call the child and scheduled regular telephone calls, sometimes they "would come home for the phone call and then she wouldn't call at all." In the six months prior to trial, the child repeatedly complained that he did not want to talk with Bhan. Nevertheless, Danet explained that if he and Kranz were to be appointed managing conservators, they would still encourage the child to remain in contact with Bhan.

In her testimony, Bhan admitted to a history of arrests in Massachusetts on charges relating to heroin and in Wisconsin for marijuana possession and battery. She also admitted that she had used cocaine in 2006 when she was pregnant with her younger son, causing her to fail a court-ordered narcotics test. She further admitted that in July 2007, she was scheduled to fly to Houston for a visit with the child, but the airline would not allow her on the plane because she was intoxicated.

Bhan explained that if she were awarded custody of the child, she would take him back to Wisconsin and continue to live with her mother, who has physical disabilities. She noted that her family could not come to Houston to visit the child because her mother had health problems. She claimed that she did not visit the child as often as permitted in part because Kranz and Danet were not cooperative with her. She asserted that they were "alienating" and "isolating" her from the child. She further explained that the financial burden of traveling, and the time that it took to raise her second son, made regular visits to Houston difficult. Although the court's visitation schedule

4

allowed her to visit the child monthly, she visited him only twice, on average, in each of the years since the child was placed in foster care.

After the trial in August 2010, the trial court appointed Danet and Kranz as the child's sole managing conservators. In November 2012, the court of appeals reversed and awarded Bhan managing conservatorship, sustaining Bhan's no-evidence challenge. Pending appeal to this Court, the parties agreed to an order appointing Danet and Kranz as possessory conservators.

Texas law requires that, "in determining the issues of conservatorship and possession of and access to the child," "[t]he best interest of the child shall always be the primary consideration of the court." TEX. FAM. CODE 153.002. The law establishes a preference in favor of a child's parents, however, providing that courts "shall" appoint the child's parent or parents as the child's sole managing conservator, "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development . . . ." *Id*. § 153.131(a). The issue in this case is whether the record contains any evidence to support the jury's conclusion that Danet and Kranze overcame this presumption.

In relevant part, the jury charge contained the following statements regarding the parental presumption:

> The biological parent shall be appointed sole managing conservator, in preference to a non-parent, unless appointment of the biological parent would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development.
>
> "Significantly Impair" means the non-parent must affirmatively prove by a preponderance of the evidence through specific actions or omissions of the

5

parent that demonstrate that an award of custody to the parent would result in physical or emotional harm to the child.

Since neither party objected to the instruction, we are bound to review the evidence in light of the instruction actually given. *See, e.g.*, *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001). A jury verdict in a custody determination case is binding on the trial court if the evidence supports it. TEX. FAM. CODE § 105.002(c). The jury's decision is entitled to substantial deference on appeal and is subject to ordinary evidentiary sufficiency review. *In re J.A.J.*, 243 S.W.3d 611, 616 n.5 (Tex. 2007) ("Jury findings underlying a conservatorship appointment are subject to ordinary legal and factual sufficiency review.").

Although the jury found in this case that Bhan's appointment as the child's conservator would significantly impair the child's physical health or emotional development, the court of appeals concluded that the evidence was legally insufficient to support that finding. We will sustain a legal-sufficiency or no-evidence challenge, if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

The court of appeals acknowledged that the evidence would support a finding that Bhan had engaged in parental misconduct during the early months of the child's life, but held that there was no evidence to establish that past misconduct was sufficiently linked to her present fitness to be the

6

child's custodian at the time of trial. The court held that Danet and Kranz did not present any evidence that Bhan's past drug use, misdemeanor criminal history, or domestic violence constituted ongoing problems or were part of a more recent pattern of behavior. Therefore, the court reasoned, the jury could not have reasonably inferred that Bhan's more remote conduct implicated her parental fitness at the time of trial, such that her appointment would significantly impair the child's physical health or emotional development. Thus, the court of appeals held that Danet and Kranz failed to prove "specific actions or omissions" on Bhan's part to override the parental presumption.[1] We disagree.

Evidence of Bhan's specific actions and omissions support the jury's finding that appointment of Bhan as custodian would substantially impair the child's physical health or emotional development. This evidence includes Bhan's conduct in the more distant past, two or three years before the August 2010 trial, such as her drug use, criminal record, failure to provide stability in the home, and abandonment of the child. But it also includes evidence of Bhan's more recent conduct prior to trial, such as her failures to visit the child, her inconsistent communication with the child, and her misconduct, such as "sneaking" into the Houston Children's Museum. We also consider the evidence that the child has bonded with Danet and Kranz in a stable environment and the emotional harm that could result from the child's separation from those who have cared for him most of his life, noting that the child was placed in foster care and has remained there because of Bhan's actions and omissions. We conclude that this evidence, taken together, constitutes some evidence that, as of the

---

[1] Although the statute does not require evidence of "specific actions or omissions" resulting in significant impairment, the jury charge did, and "[t]he sufficiency of the evidence must be measured by the jury charge when, as here, there has been no objection to it." *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005).

August 2010 trial date, Bhan's pattern of behavior demonstrated that placement of the child in Bhan's custody would significantly impair the child's physical health or emotional development.

We make no judgment today as to the exact length of time required to ameliorate a history of bad conduct, nor do we suggest that the removal of a child from a long-term stable environment would, in itself, be sufficient to establish that a change in custody would substantially impair the child's physical health or emotional development. These questions are purely contextual and are subject to the good judgment of the fact-finder at trial. We simply hold that the evidence in the record in this case—which includes evidence of misconduct in the more distant past, evidence of more recent misconduct, and evidence of the stability of the child's current placement—together constitutes some evidence to support the jury's verdict. Accordingly, we grant the petition for review and, without hearing oral argument, reverse the court of appeals' judgment. *See* TEX. R. APP. P. 59.1. Because the court of appeals did not reach the question of whether the evidence is factually (as opposed to legally) sufficient to support the verdict, we remand the case to the court of appeals for factual sufficiency review.

OPINION DELIVERED: June 27, 2014