

IN THE
TENTH COURT OF APPEALS

No. 10-18-00233-CV

IN THE INTEREST OF F.R.N., A CHILD

From the 74th District Court
McLennan County, Texas
Trial Court No. 2017-1501-3

## MEMORANDUM OPINION

Krystle N. appeals from a judgment that named her and Nadine N., her mother-in-law, joint managing conservators of her daughter, F.R.N., with Nadine having the exclusive right to establish F.R.N.'s primary residence. Krystle argues that the trial court erred by finding that Nadine had standing to bring the action, that the trial court abused its discretion by naming Nadine as a joint managing conservator, and that the trial court abused its discretion in the admission of hearsay evidence. Because we find no reversible error, we affirm the judgment of the trial court.

**FACTS**

Krystle and Matt, Nadine's son, were married at a young age and Krystle got

pregnant with F.R.N. a short time later. From the time of F.R.N.'s birth, there was evidence that F.R.N. spent a substantial amount of time with Nadine and Jeff, Nadine's longtime boyfriend, and was spending around half of the time with Nadine by the age of three or four. Krystle and Matt would go out and "have fun" and leave F.R.N. with Nadine. Krystle and Matt were financially unstable and would spend their money on entertainment for themselves, such as tattoos, alcohol, and marijuana, rather than necessities for their home. Nadine spent substantial sums to assist Krystle and Matt for the purpose of ensuring F.R.N.'s safety while she was with her parents, including purchasing a new hot water heater when theirs had been inoperable for a period of time while they had F.R.N. with them, rent, car payments, and F.R.N.'s schooling. This was in addition to Nadine having possession of F.R.N. approximately 60 percent of the time according to Nadine. Nadine had also assisted both Matt and Krystle with employment opportunities.

In 2015, Matt, and later Krystle, began using marijuana. In late 2016 and early 2017, Krystle started staying out all night and drinking in Austin; and would then drive back to Waco where they were then living, in the early morning. She was also having sex with other men prior to Krystle and Matt separating in January of 2017, when Matt moved to Arkansas. The day that Matt left, Krystle took F.R.N. to Nadine "because she couldn't stand the sight of her." A witness heard Krystle tell Nadine that she couldn't handle F.R.N. and wanted Nadine to watch her. From that time until this proceeding was

instituted in May of 2017, Nadine and the witnesses she presented testified that F.R.N. resided primarily with Nadine and Krystle would show up occasionally. Even by Krystle's admission, F.R.N. resided with Nadine at least half the time. Nadine estimated that she took care of F.R.N. almost full time, at least five days a week, and sometimes for longer periods of time.

Prior to this time, F.R.N. was struggling with grades and behavior in school and had multiple tardies and absences. While residing with Nadine beginning in 2017, her grades and behavior greatly improved at school. Nadine attended all school functions and was very active in assisting at F.R.N.'s school. Krystle was very rarely seen picking F.R.N. up from school and did not attend any school functions.

Krystle admitted to various people that she was drinking heavily, driving while intoxicated at times, using drugs, and engaging in sexual relationships while F.R.N. was with Nadine. One time a witness smelled alcohol on Krystle's breath while she had been driving with F.R.N. in the car with her.

When Krystle would go out of town, Nadine would have access to Krystle's residence to feed her dogs. Nadine found marijuana products in Krystle's residence twice in locations that would have been easily accessible to F.R.N. Nadine found edible marijuana which was wrapped to look like candy on her bedside table in her bedroom. Nadine and Jeff also found marijuana "dabs" in her refrigerator. Both times, they disposed of the marijuana rather than reporting her to law enforcement or CPS. At trial,

Krystle admitted to using marijuana more than ten times. Nadine found evidence in Krystle's messenger app which Krystle had left open on Nadine's cell phone that she had used marijuana more than twenty times in early 2017.

On May 2, 2017, Krystle took F.R.N. shopping with her at Target and stole a doll which she gave to F.R.N. Krystle joked with Nadine later that children provide a great distraction to stealing items from a store. F.R.N. was confused about taking items versus paying for them from this incident.

Nadine filed a petition seeking to be given the right to establish the residence of F.R.N. on May 5, 2017, asserting that F.R.N. would not be safe residing with Krystle. Affidavits from Nadine and Matt were attached to the petition. The trial court conducted the first temporary hearing on May 20, 2017, and after taking the matter under advisement, named Nadine and Krystle as joint managing conservators with Nadine having the right to establish F.R.N.'s residence and Krystle having visitation pursuant to a standard possession order.

When Krystle would have F.R.N. for extended visits pursuant to the temporary orders, F.R.N. was returned to school at different times in dirty clothes, unbathed, smelling badly, and with her hair unfixed, which was upsetting and embarrassing to F.R.N., who was then six years old. One time she was returned with abscesses on her feet, which Nadine believed was due to dog feces that had been left on the floor of F.R.N.'s bathroom. After visits, F.R.N. would be angry and emotional and hard to control. F.R.N.

at times would have bruises that a witness testified that F.R.N. had told her one time was caused by Krystle kicking her repeatedly, although F.R.N. said it was her fault that Krystle was mad. F.R.N. also lost a baby tooth that was not loose when Krystle picked her up, which she said was caused by walking into a door. F.R.N. also alleged that other bruises had also been caused by walking into a door. There was a report made to CPS, but it was ruled out because F.R.N. did not make an outcry against her mother and CPS did not find any other concerns.

F.R.N. was evaluated for autism by a child psychologist, who determined that F.R.N. did not meet the criteria to be diagnosed with autism at that time. Other testing and diagnostics was conducted, and the psychologist determined that F.R.N. suffers from Reactive Attachment Disorder (RAD), which was based in large part on the instability in her life from her parents. In reaching this determination, the psychologist's report stated that:

> [F.R.N.] exhibits a pattern of inhibited and erratic emotionally-withdrawn behaviors toward adult caregivers, manifested by her hesitance and atypical response to seeking and receiving comfort when distressed. She demonstrates a pattern of social and emotional disturbances characterized by reduced emotional responsiveness to others and episodes of unexplained irritability, anger, sadness, and fearfulness that she expresses even during nonthreatening interactions with adult caregivers.

The psychologist testified at the final hearing that children who are diagnosed with RAD require therapeutic intervention and "an environment that's consistent and predictable and structured." Failure to address this disorder can have far-reaching

serious consequences into adulthood. The psychologist opined that Nadine's "consistency" and "predictability" at home and at her school were helping F.R.N.'s behavior to improve and that to remove her from Nadine's home would be especially detrimental to F.R.N. The psychologist also testified that removing F.R.N. from her school would be extremely detrimental to her and would greatly increase her anxiety. The psychologist began seeing F.R.N. for therapy after the evaluation. Improvements made by F.R.N. during therapy were attributed to having a stable, consistent and predictable home life.

During one session, F.R.N. admitted to the psychologist that Krystle and Nadine don't like each other and that she was extremely fearful of not seeing either one of them again. F.R.N. told the psychologist that Krystle had told her that after Christmas that year she would never see Nadine again, which caused F.R.N. great anxiety. F.R.N. was very anxious about potentially being removed from Nadine's home.

Krystle was living in Austin at the time of the final hearing and witnesses testified that she was stable and doing well there. The CPS investigator who investigated the allegations against Krystle testified that the Department did not have any concerns about Krystle's parenting. There was testimony that marijuana use is not considered to be a negative thing in the Austin area as long as the children are not directly harmed by its use. The psychologist testified that there were no concerns specifically after Krystle's visits with F.R.N. that would rise to the level of intentionally causing significant

impairment to F.R.N., although the psychologist still believed that F.R.N. should be placed with Nadine.

## STANDING

In her first issue, Krystle complains that the trial court erred by determining that Nadine had standing to bring this action because there was insufficient evidence of significant impairment of F.R.N. Nadine alleged that she had standing based on Section 102.004(a)(1) of the family code which states that a grandparent may file an original suit requesting managing conservatorship of a child if there is satisfactory proof that "the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." TEX. FAM. CODE ANN. § 102.004(a)(1).

We review questions of standing de novo. *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd). The party asserting standing bears the burden of proof on this issue. *Id*. In assessing standing, we look primarily to the pleadings and consider relevant evidence of jurisdictional facts "when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). We construe the pleadings in the petitioner's favor, looking to the language to ascertain the pleader's intent. *In re M.J.G.*, 248 S.W.3d 753, 757 (Tex. App.—Fort Worth 2008, no pet.); *Doncer v. Dickerson*, 81 S.W.3d 349, 353 (Tex. App.—El Paso 2002, no pet.). In family law cases in which a petitioner must go beyond mere pleading allegations and provide

"satisfactory proof" of jurisdictional facts to establish statutory standing, the petitioner meets that burden where those predicate facts are proven by a preponderance of the evidence. *In re S.M.D.*, 329 S.W.3d at 13. As in this case, when the trial court does not make separate findings of fact and conclusions of law on the issue of standing, "we imply the findings necessary to support the judgment . . . [and] review the entire record to determine if the trial court's implied findings are supported by any evidence." *Id*.

We find that, based on our review of the entire record, Nadine proved by a preponderance of the evidence that she had standing to bring this action. At the time of the filing of the petition, Krystle had largely left the care and responsibility of F.R.N. with Nadine while she engaged in harmful, immoral, and in some instances, illegal conduct. Because the trial court is charged with the duty to make credibility determinations, and in the absence of findings of fact and conclusions of law, we find that the trial court's determination and the implied findings necessary to support the determination that appointment of Krystle as a sole managing conservator would significantly impair F.R.N.'s physical health or emotional well-being were supported by the evidence. We overrule issue one.

JOINT MANAGING CONSERVATORS

In her second issue, Krystle complains that the trial court abused its discretion by naming Nadine a joint managing conservator of F.R.N. because the evidence did not support a finding of significant impairment of F.R.N., and Nadine did not overcome the

parental presumption.

We review the trial court's conservatorship determination for abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Under this standard, legal and factual sufficiency challenges are not independent grounds of error but factors used to determine whether the trial court abused its discretion. *In re K.S.*, 492 S.W.3d 419, 426 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *In re E.S.H.*, No. 11-14-00328-CV, 2015 Tex. App. LEXIS 4908, 2015 WL 2353349, at *1 (Tex. App.—Eastland May 14, 2015, no pet.) (mem. op.). A trial court abuses its discretion by acting unreasonably, arbitrarily, or without reference to guiding principles. *In re K.S.*, 492 S.W.3d at 426. "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *Id*. However, the best interest of the child is always the primary consideration of the court in determining managing conservatorship. TEX. FAM. CODE ANN. §153.002.

Although trial courts are afforded broad discretion in deciding family law questions, the legislature has explicitly limited the exercise of that discretion when a nonparent seeks to be appointed as a managing conservator. *Danet v. Bhan*, 436 S.W.3d 793, 796 (Tex. 2014). When a court determines conservatorship between a parent and a nonparent, a presumption exists that appointing the parent as the sole managing conservator is in the child's best interest; this presumption is deeply embedded in Texas law. TEX. FAM. CODE ANN. § 153.131; *Danet*, 436 S.W.3d at 796. Section 153.131(a)

provides:

> [U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

TEX. FAM. CODE ANN. § 153.131(a).

The statutory language in Section 153.131(a) creates a strong presumption in favor of parental custody and imposes a heavy burden on a nonparent. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). The nonparent may rebut the presumption with affirmative proof, by a preponderance of the evidence, that appointing the parent as managing conservator would significantly impair the child, either physically or emotionally. *Id.*; *see also In re J.A.J.*, 243 S.W.3d at 616. Usually, the nonparent must present evidence that shows a parent's acts or omissions will have a detrimental effect on the children's physical health or emotional development. *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.); *see Lewelling*, 796 S.W.3d at 167. Evidence of acts or omissions that may constitute significant impairment include, but are not limited to, physical abuse, severe neglect, drug or alcohol abuse, immoral behavior, parental irresponsibility, and an unstable home environment. *In re S.T.*, 508 S.W.3d at 492. While not determinative, a parent's past conduct may have some bearing on future conduct. *See In re B.B.M.*, 291 S.W.3d 463, 469 (Tex. App.—Dallas 2009, pet. denied).

There was conflicting testimony regarding Krystle's care of F.R.N. physically and

emotionally both before and after the filing of the petition. Regarding F.R.N.'s emotional development, the trial court heard testimony about the emotional instability that was caused by Krystle and Matt's instability prior to their separation, and Krystle's breakdown following their separation. Following visits with Krystle, F.R.N. was often withdrawn and acted very differently. Matt, Nadine, Jeff, and the child psychologist all testified that F.R.N.'s emotional well-being would be significantly impaired if Krystle was appointed as F.R.N.'s sole managing conservator. Evidence of uncharacteristic behavior after the child's visit with a parent is some evidence of significant impairment of emotional development. *See In re J.C.*, 346 S.W.3d 189, 195 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

This is not merely a situation where a child will be sad if they are not allowed to see their grandparents where the parents have otherwise acted in the child's best interests. The RAD was the result of the instability caused by Krystle and Matt's failure to be responsible parents throughout F.R.N.'s life, which worsened substantially after their separation, contrasted with Nadine's establishment of her home as a stable and predictable place for F.R.N. The evidence shows that removing F.R.N. from the only consistent home she has ever known due to Krystle's life choices would substantially impair F.R.N.'s emotional well-being.

After reviewing the record, we hold that the trial court did not abuse its discretion when it appointed Nadine to be a joint managing conservator with Krystle and to name

her as the party with the right to establish F.R.N.'s residence. The evidence supports the trial court's implied findings that F.R.N.'s physical health or emotional development would be significantly impaired if Krystle were appointed as the sole managing conservator. Therefore, Nadine sufficiently rebutted the parental presumption. *See* TEX. FAM. CODE ANN. §153.131(a). We overrule issue two.

**ADMISSION OF EVIDENCE**

In her third issue, Krystle complains that the trial court abused its discretion by the admission of hearsay testimony by F.R.N. to two witnesses. The first objectionable testimony was regarding when F.R.N. told a friend of Nadine's that her mother had kicked and hit her which caused her to be bruised all over. The second was when F.R.N. told Nadine about being embarrassed to give Krystle a picture F.R.N. had drawn that showed a "rash" around Krystle's neck which Nadine surmised were really hickeys.

We review a trial court's evidentiary ruling for an abuse of discretion. *Whirlpool v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009). If the trial court abuses its discretion in an evidentiary ruling, the complaining party must still show harm on appeal to warrant reversal. *See* TEX. R. APP. P. 44.2(a); *see also Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009). Harmful error is error that "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a); *see McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992). In other words, "[w]e review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted." *Nissan Motor*

*Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

Even if the admission of the complained-of testimony was erroneous, we do not find that Krystle was harmed by the admission of the evidence. Based on the discussion of the evidence and the facts set forth above, neither instance of testimony has been shown to be evidence "that the judgment turn[ed] on." *Nissan Motor Co.*, 145 S.W.3d at 144. We overrule issue three.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.


          TOM GRAY
          Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Neill
Affirmed
Opinion delivered and filed August 7, 2019
[CV06]

