**Opinion filed July 13, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00025-CV

_____

## IN THE INTEREST OF T.P., A.P., K.S., AND K.S., CHILDREN

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10391-CX**

### M E M O R A N D U M   O P I N I O N

Appellant, the mother of K.S. and K.S., appeals a final order in which the trial court appointed C.S., a nonparent, as the permanent managing conservator of K.S. and K.S. In a single issue, Appellant asserts that the appointment of C.S., the grandmother of K.S. and K.S., as the managing conservator of them was not in the children's best interest. We affirm.

The Department initially filed a petition for protection of the children and for termination of the parents' parental rights. Over the course of the underlying proceedings, the parties reached an agreement to not terminate parental rights, and

that no parent be named as a conservator. The trial court appointed the Department and the biological father of T.P. and A.P. as the joint managing conservators of them. Those appointments are not at issue in this appeal. At the time of the entry of the final order affecting them, T.P. was seventeen years old and A.P. was eight years old.

Following a bench trial, the trial court appointed C.S., the paternal step-grandmother, as the permanent managing conservator of six-year-old twins, K.S. and K.S. Appellant asserts in her sole issue that the trial court abused its discretion when it appointed C.S., rather than the Department, as K.S. and K.S.'s permanent managing conservator because the appointment is not in the best interest of the children. She limits her contentions on appeal to the argument that naming the Department as the managing conservator of the twins would better foster their relationship with their siblings.[1]

*Appointment of Permanent Managing Conservatorship*

We review the trial court's conservatorship determination for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re A.M.T.*, 592 S.W.3d 974, 976 (Tex. App.—San Antonio 2019, pet. denied). Under this standard, legal and factual sufficiency are not independent grounds of error but factors used to determine whether the trial court abused its discretion. *In re M.T.*, No. 11-17-00340-CV, 2019 WL 1291246, at *2 (Tex. App.—Eastland Mar. 21, 2019, no pet.) (mem. op.); *In re K.S.*, 492 S.W.3d 419, 426 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A trial court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to guiding principles. *K.S.*, 492 S.W.3d at 426; *see also J.A.J.*,

---

[1]Appellant does not contend that the trial court abused its discretion by appointing a nonparent managing conservator rather than her, the parent, as sole or joint managing conservator of K.S. and K.S. *See* TEX. FAM. CODE ANN. § 153.131(a) (West 2014) (providing a rebuttable presumption that a parent must be appointed sole managing conservator or joint managing conservator with the other parent); *Danet v. Bhan*, 436 S.W.3d 793, 796 (Tex. 2014). However, we note that the trial court expressly found that appointing one or both of the children's parents as managing conservators would significantly impair the children's physical health or emotional development.

243 S.W.3d at 616. "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *K.S.*, 492 S.W.3d at 426. The best interest of the child is always the primary consideration in the determination of managing conservatorship, and the trial court is given wide latitude in determining the best interest of a child. FAM. § 153.002; *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

### *Evidence Presented at Trial*

On, May 3, 2021, the Department filed an Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship as to T.P., A.P., K.S., and K.S. The petition alleged the sexual abuse of one of the children, neglectful supervision, endangering conditions, and drug use by the children's mother. The Department requested that the parental rights of the

mother of all four children, the father of T.P. and A.P., and the father of K.S. and K.S. be terminated.

Initially, the trial court appointed the Department as the temporary managing conservator of all the children. In June 2022, K.S. and K.S. were temporarily placed with their paternal grandmother in Abilene. The placement occurred when one of the twins tested positive for marihuana. At the initial September 2022 hearing, the Department withdrew all termination grounds as to each parent. Almost all parties were in agreement that no parent was to be named conservator of any of the children. Because the twins' paternal grandmother was not willing to be a long-term placement for the children, the Department identified the twins' paternal grandfather and his wife, C.S., the twins' step-grandmother, as a potential long-term placement.

C.S. and her husband live in Illinois.[2] They had an approved home study and a two-and-a-half week visit with K.S. and K.S. prior to the initial hearing. There were no concerns with the home study or the visit. The grandfather is a retired military serviceman and business owner, and the step-grandmother is a retired civil servant. The Department found that the paternal grandparents do not use illegal substances, nor do they permit the use of them in the home. The home was found to be suitable for the children with individual bedrooms for each child and appropriate activities for the children. The paternal grandparents were found to have the financial means to provide for the children and intended to enroll the children in a tuition-based school. The grandparents intended to provide the twins with opportunities for extracurricular activities and to attend college free of debt later in their lives.

---

[2]The paternal grandparents live in the same household. However, the step-grandmother, C.S., was the only one to testify and was the sole individual named as permanent managing conservator in the final order.

4

C.S. informed the trial court that they intended to teach the children about consequences and how to correct their own mistakes or learn from them, and C.S. testified that she and her husband would raise the children with compassion. She also testified that they planned to seek counseling support for both the twins and themselves to assist with the transition.

During the twins' visit to Illinois, C.S. gave K.S. and K.S. the opportunity to have Zoom contact with their siblings. C.S. testified that she would also be willing to facilitate face-to-face contact with the siblings after the twins' move to Illinois. C.S. stated that they would make all decisions in the children's best interest and that she was informed and understood the obligations of acting as permanent managing conservator of the children.

At the hearing, the Court Appointed Special Advocate for the children testified that she believed it was in the best interest of the twins to be placed in Illinois with the paternal grandparents. She testified that the stable home gained by the children would outweigh any loss from the move. She testified she did not believe the children would view the move as negative because they were young and did not live with T.P. and A.P. prior to the case.

Following the September hearing, K.S. and K.S. were placed with their paternal grandparents in Illinois. During their placement in Illinois, the children were enrolled in school and made significant developmental progress in their education. They also engaged in, and reportedly enjoyed, extracurricular activities in their new community.

The record reflects that the final hearing occurred on December 7, 2022. The Department agreed at the hearing that K.S. and K.S. should remain in Illinois with the paternal grandparents. Initially, all other parties agreed that C.S. should be made permanent managing conservator for K.S. and K.S. However, as the hearing

progressed, the attorney for T.P. and the mother opposed the conservatorship with the paternal grandparents.

At the time of the hearing, T.P. had been placed in a treatment facility which complicated in-person sibling visitation. During her testimony, the case manager did not identify any adverse impacts experienced by K.S. and K.S. as a result of solely virtual visits with T.P. The case manager expressed a concern, however, that K.S. and K.S. would experience a loss if there was no contact with A.P. C.S. testified that they were willing to continue to facilitate virtual and in-person visits with A.P. moving forward.

During the final hearing, C.S. testified over Zoom that she and her husband wished to be named permanent managing conservators of K.S. and K.S. C.S. agreed to continue monitored sibling visits over Zoom. She also testified that she would be willing to transport the children to Texas twice a year as long as they would be in a safe place. There was also testimony that the grandparents brought K.S. and K.S. to Texas over the Thanksgiving holidays to visit with their siblings.

Though some Zoom visits with the siblings were missed during the period, C.S. testified that it was the result of technical issues and inaction by the permanency case manager and that she had not refused to set up sibling visits. C.S. testified that, prior to the final hearing, she was unaware that it was permissible for her to contact the maternal aunt with whom A.P. had been placed without going through the case manager. C.S. also recognized the importance of the children's sibling relationships. She testified that she was willing to share contact information with the siblings' placements to allow K.S. and K.S. and the other children to remain in contact. Following the final hearing, the trial court issued an order appointing C.S. as the permanent managing conservator of K.S. and K.S.

*Analysis*

In the mother's sole issue, she asserts that the trial court abused its discretion when it determined that the appointment of C.S. was in the best interest of K.S. and K.S. The mother asserts that there is the potential for the complete severance of the sibling relationships if C.S. were to remain the permanent managing conservator of K.S. and K.S. with the children living in Illinois. She also contends that the Department should be named as permanent managing conservator until a more stable visitation plan is implemented, and only then, would it be appropriate for C.S. to be reinstated as managing conservator.

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). We are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, we conclude that, based on the evidence presented at trial and *Holley* factors, the trial court did not abuse its discretion in the appointment of C.S. as the permanent managing conservator of K.S. and K.S. *See Holley*, 544 S.W.2d at 371–72.

As set forth above, the evidence presented does not indicate that a complete severance or dissolution of the sibling relationship is imminent. The testimony of C.S. indicated that she was willing to continue to facilitate the sibling relationship. K.S. and K.S. had Zoom visitations with their siblings and C.S. took them to Texas during the months between hearings after their placement in Illinois. C.S. testified that she was willing to exchange numbers with the aunt with whom A.P. had been placed to provide the children with a reliable avenue of regular communication.

The grandparents also owned a home equipped to house the children. They enrolled the children in school immediately following their placement in Illinois, and the children showed substantial improvements in their educational development.

K.S. and K.S. were provided opportunities to join extracurriculars and were actively involved in those extracurriculars by the final permanency hearing. C.S. also indicated that she and her husband intended to seek counseling for themselves and the children to ensure the children would be emotionally supported while adjusting to the placement.

Upon considering the record, the emotional and physical needs of the children now and in the future, the plans for the children by the Department, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, and the stability of the home intended for the children's placement, we conclude that the evidence is legally and factually sufficient to support that the appointment of C.S. as the permanent managing conservator is in the best interest of the children. *See id.*; *In re A.M.T.*, 592 S.W.3d at 978. We defer to the trial court's findings as to the children's best interest, and we cannot conclude in this case that the trial court abused its discretion when it appointed the paternal step-grandmother, rather than the Department, as the children's permanent managing conservator. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Accordingly, we overrule the mother's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


July 13, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.