# NO. 12-23-00079-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| *A.J., A CHILD* | § | *COUNTY COURT AT LAW NO. 2* |
|  | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

M.J. appeals the trial court's order appointing the Texas Department of Family and Protective Services (the Department) as sole managing conservator of A.J. and declining to appoint her as possessory conservator of A.J. In two issues, M.J. urges the trial court erred in denying her access to A.J. We affirm.

## BACKGROUND

M.J. is the mother of A.J. On May 9, 2022, the Department filed an original petition for protection of a child, for conservatorship, and for termination of parental rights. The Department was appointed temporary managing conservator of the child, and M.J. received limited access to the child.

At the conclusion of a trial on the merits, the jury found, by clear and convincing evidence, that M.J. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (E) and (O) Texas Family Code Section 161.001(b)(1). However, the jury found that (1) termination of the parent-child relationship between M.J. and A.J. is not in the child's best interest, (2) the Department should be named managing conservator, and (3) M.J. should not be appointed possessory conservator. Based on these findings, the trial court ordered that the parent-child relationship between A.J. and M.J. not be terminated. It further ordered that the Department be appointed permanent managing conservator and found that appointment of M.J. would not be in the child's best interest because

doing so would impair A.J.'s physical health or emotional development. The trial court did not appoint M.J. possessory conservator and denied her possession or access on grounds that it was not in the best interest of the child and permitting possession or access would endanger A.J.'s physical and emotional welfare. This appeal followed.

## CONSERVATORSHIP

In her first issue, M.J. urges the evidence is legally and factually insufficient to support the finding that appointing her as possessory conservator is not in A.J.'s best interest and would endanger her physical and emotional welfare.[1]

### Standard of Review

We review a trial court's conservatorship rulings for abuse of discretion. *See **In re J.A.J.**,* 243 S.W.3d 611, 616 (Tex. 2007). A trial court has broad discretion in determining conservatorship, and it "does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." ***In re J.J.R.S.***, 607 S.W.3d 400, 404 (Tex. App.—San Antonio 2020), *aff'd*, 627 S.W.3d 211 (Tex. 2021) (internal quotation marks omitted). In family law cases, the legal and factual sufficiency of the evidence is one factor in determining whether the trial court abused its discretion, but it is not an independent ground of error. *See, e.g., **In re Guardianship of C.E.M.-K.**,* 341 S.W.3d 68, 80 (Tex. App.—San Antonio 2011, pet. denied).

Under an abuse of discretion standard, we engage "in a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion; and (2) whether the trial court erred in its application of discretion." ***Zeifman v. Michels***, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied). An appellant who challenges the legal sufficiency of a finding on which he did not bear the burden of proof must show that no evidence supports the finding. *Id.* at 588. In a factual sufficiency challenge, the appellant must show the finding "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Id.* at 588–89.

Moreover, the Family Code provides that a jury's custody determination is binding on the trial court if supported by the evidence. TEX. FAM. CODE ANN. § 105.002(c)(1)(C) (West Supp. 2022); ***Danet v. Bhan***, 436 S.W.3d 793, 796 (Tex. 2014). In conducting our sufficiency review,

---

[1] M. J. does not appeal the appointment of the Department as permanent managing conservator.

we are mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. ***Jones v. Tarrant Util. Co.,*** 638 S.W.2d 862, 866 (Tex. 1982). The trier of fact may resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. ***Webb v. Jorns,*** 488 S.W.2d 407, 411 (Tex. 1972). We cannot substitute our judgment or opinion for that of the jury. ***Lofton v. Tex. Brine Corp.,*** 720 S.W.2d 804, 805 (Tex. 1986).

## Applicable Law

"The court shall appoint as a possessory conservator a parent who is not appointed as a sole or joint managing conservator unless it finds that the appointment is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child." TEX. FAM. CODE ANN. § 153.191 (West 2014). "[T]he relationship between parent and child is constitutionally protected." ***Fish v. Lebrie***, No. 03-09-00387-CV, 2010 WL 5019411, at *3 (Tex. App.—Austin Dec. 10, 2010, no pet.) (mem. op.) (alteration in original) (quoting ***Quilloin v. Walcott***, 434 U.S. 246, 255, 98 S. Ct. 549, 554, 54 L. Ed. 2d 511 (1978)). "[A] parent's right to the care and custody of his child is a fundamental liberty interest more precious than property rights." ***Id.*** (quoting ***In re M.S.***, 115 S.W.3d 534, 547–48 (Tex. 2003) (citing ***Santosky v. Kramer***, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982)). A "complete denial of access should be rare." ***In re B.P., Jr.***, No. 2-07-251-CV, 2008 WL 2639264, at *7 (Tex. App.—Fort Worth July 3, 2008, no pet.) (mem. op.); *see **In re J.J.R.S.***, 627 S.W.3d 211, 220 (Tex. 2021). In other words, although "[t]rial courts have broad discretion to determine the frequency and duration of visitation rights, "[a] complete denial of parental access should be reserved for situations rising nearly to the level that would call for a termination of parental rights." ***In re B.O.***, No. 02-16-00485-CV, 2017 WL 2590571, at *30 (Tex. App.—Fort Worth June 15, 2017, no pet.) (mem. op.); *see **In re P.M.***, No. 02-14-00205-CV, 2014 WL 8097064, at *30 (Tex. App.—Fort Worth Dec. 31, 2014, pet. denied) (mem. op.). Denial of access is "reserved only for 'the most extreme of circumstances.'" ***Fish***, 2010 WL 5019411, at *3 (quoting ***In re E.N.C.***, No. 03-07-00099-CV, 2009 WL 638188, at *15 (Tex. App.—Austin Mar. 13, 2009, no pet.) (mem. op.) (citing ***Hale v. Hale***, No. 04-05-00314-CV, 2006 WL 166518, at *3 (Tex. App.—San Antonio Jan. 25, 2006, pet. denied) (mem. op.); ***Green v. Green***, 850 S.W.2d 809, 812 (Tex. App.—El Paso 1993, no writ) (parent's entitlement to periodic visitation with child "cannot be denied except in extreme circumstances")); *see*

***Brandon v. Rudisel***, 586 S.W.3d 94, 107 (Tex. App.—Houston [14th Dist.] 2019, no pet.). "In such cases, we must find a balance between deferring to the trial court's factual determinations and carefully examining the record for evidence of extreme circumstances." ***Fish***, 2010 WL 5019411, at *3.

Some of the factors an appellate court may consider in ascertaining the best interest of a child include the non-exhaustive list set forth in ***Holley v. Adams***. 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include the following: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. ***Id***. at 371–72. These factors are not exhaustive. ***In re C.H.***, 89 S.W.3d 17, 27 (Tex. 2002).

The family code also provides a list of factors that we will consider in conjunction with the ***Holley*** factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2019). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (5) the willingness and ability of the child's family to seek, accept, and complete counseling services and cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes in a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills; and (8) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id*. § 263.307(b)(1), (3), (6), (8), (10), (11), (12), (13).

## Analysis

M.J., who was twenty-four years old at the time of trial, testified that she ran away from home several times as a teenager, smoked marijuana, and did not graduate from high school.

She testified that she lived with her parents in Nevada from A.J.'s birth until the case began. D.A., M.J.'s father, stated that M.J. randomly took A.J. to Texas one day.

The evidence at trial further showed that M.J. took A.J., who was at that time eight months old, to Woodland Heights Memorial Hospital on May 6, 2022. M.J. told the hospital staff that she read online that she could take her baby to the hospital, leave her there for up to two weeks, and return to get her. She told the staff that she needed a break. The hospital called both Lufkin Police Department and the Department. The officers testified that they responded to the hospital for a welfare concern. The baby did not appear to be in danger or need medical treatment. The officers stayed at the hospital until A.J. was transferred into Department custody, and then they left. No charges were filed against M.J.

During the pendency of the case, M.J. lived in Nevada. When A.J. was with a foster family in Texas, M.J. had virtual visits with A.J. According to Lashunda Vinson, a conservatorship worker, the virtual visits "went horrible." Instead of focusing on the child, M.J. focused on what was happening around A.J. in the foster home. Vinson found the visits concerning because of the very little interaction, very little bond between M.J. and A.J. Vinson also stated that M.J. always complained about A.J.'s hair or snacks. According to Vinson, M.J. always found the negatives and would not notice positives. For example, if M.J. saw a picture of A.J. smiling and happy, M.J. complained about the way her hair was styled. Court Appointed Special Advocates (CASA) paid for M.J. to visit A.J. in Texas. M.J. came for three days and had in-person visits, which went "pretty well."

D.A. testified that M.J.'s life is controlled by a man named Brandon. According to D.A., M.J. does whatever Brandon says and will drop anything and everything when he asks. For instance, she once left A.J. alone with the front door open when Brandon called. D.A. and his wife discovered A.J. downstairs alone and locked the front door. When M.J. returned, she was high and smelled of marijuana. During this case, M.J. had supervised visits at their house after A.J. was placed with D.A. and his wife. They gave her as much visitation as she requested because they felt it was important. However, according to D.A., M.J. did not like having to be supervised or follow their rules. Most recently, she tried to leave with A.J. D.A. testified that M.J. does not want A.J. with family because she wants to take A.J. to a different state, or even Canada, and change her name to avoid the Department's continued involvement. He expressed concern that if M.J. obtained custody, she would give A.J. away. M.J. has no patience and cannot

even spend fifteen minutes with A.J. D.A. testified that he does not trust M.J. because of her plans to kidnap A.J. and take her to Canada with a drug dealer, Brandon. He testified that he believes Brandon is a drug dealer based on his interactions with M.J. and that M.J. uses drugs and keeps drug paraphernalia in her bag. He testified that he and his wife were able to ensure that M.J. did not mistreat A.J. M.J. confirmed that she smoked marijuana while she was out with Brandon.

The evidence also showed that M.J. disregards medical advice. A.J. suffered recurrent ear infections and the doctor recommended tubes. M.J. refused to allow it. Eventually, the court held a hearing and ordered the procedure be done. A.J. had to have tubes placed in her ears before she would be permitted to fly to Nevada for placement with D.A. M.J. was also reluctant to give A.J.'s medical records to the Department. By the time the Department obtained the records, A.J. had received a double vaccination. M.J. also refused to allow A.J. to receive her fifteen-month vaccinations.

In addition, M.J.'s behavior was described as "erratic." Department investigator Aubrey Fields testified M.J. sent her "30 to 40 text messages a day, very random, very erratic, not necessarily in context of the care or wellbeing" of A.J. The evidence showed that M.J. did not activate her camera during some of the virtual visits with A.J. And court-appointed advocate Kelley Moore characterized M.J.'s texts as "abusive" because she repetitively asked the same questions as she disliked Moore's answers. Moore further opined that M.J. disregarded anyone who tried to tell her what to do, which affected A.J.'s safety. She also stated that M.J. engages in behavior that is dangerous to A.J. Vinson testified that M.J. did not change her behavior during the pendency of the case. While M.J. may have completed portions of her service plan, Vinson testified M.J. treated the service plan's requirements as a checklist instead of actual behavior modifications.

Based on the evidence, the jury could have concluded that M.J. had a history of substance abuse and other concerning behaviors that continued after A.J.'s birth, resulting in M.J. disregarding her parental responsibilities. Thus, the jury could have determined these behaviors show a potential emotional or physical danger to A.J. *See In Interest of S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.). Furthermore, based on the evidence that M.J. attempted to leave A.J. at a hospital and concerns she would again abandon A.J., the jury could reasonably conclude that appointing M.J. possessory conservator is not in A.J.'s best interest. As

such, the trial court could reasonably conclude that denying M.J. access to A.J. was in A.J.'s best interest. *See J.C. v. Tex. Dep't of Family & Prot. Servs.*, No. 03-12-00670-CV, 2013 WL 1405892, at *8 (Tex. App.—Austin Apr. 3, 2013, no pet.) (mem. op.) (trial court did not abuse discretion in denying father visitation and access "at this time" when father was imprisoned and children were very young); *In re W.H.M.*, No. 01-00-01396-CV, 2003 WL 22254713, at *9-10 (Tex. App.—Houston [1st Dist.] Oct. 2, 2003, pet. denied) (mem. op.) (upholding jury's implied findings that allowing father access to child would endanger emotional or physical welfare when evidence showed likelihood child would be sexually assaulted by child's mother if returned to father's care).

Therefore, we hold the evidence is sufficient to support the jury's finding, and the trial court's order, that appointment of M.J. as possessory conservator is not in A.J.'s best interest and would endanger A.J.'s physical or emotional welfare. *See J.C.*, 2013 WL 1405892, at *8.[2] We overrule M.J.'s first issue.

## LACK OF HEARING

In her second issue, M.J. urges the trial court erred by not holding a hearing following the jury's verdict on the issue of possessory conservatorship. In this case, the jury was asked whether M.J. should be appointed possessory conservator, and the jury answered in the negative. M.J. argues that the trial court "assumed" M.J. was not to be offered possession or an access schedule, which effectively allowed the jury to determine a term or condition of possession or access, which is impermissible.

Under the Texas Family Code, the jury is not permitted to determine a term or condition of possession of or access to a child. TEX. FAM. CODE ANN. § 105.002(c)(2)(B). However, the Family Code also states that a party is entitled to a verdict by the jury "and the court may not contravene a jury verdict" on the issue of the appointment of a possessory conservator. *Id.* § 105.002(c)(1)(C). Furthermore, a finding that a parent should not be appointed possessory conservator because it would endanger the emotional or physical well-being of the child precludes the trial court from granting the parent any possession of or access to the child. *Hopkins v. Hopkins*, 853 S.W.2d 134, 138 (Tex. App.—Corpus Christi 1993, no writ). And, as

---

[2] It is important to note that because M.J.'s parental rights were not terminated, should circumstances change, she may file a motion to modify the order. *See* TEX. FAM. CODE ANN. § 156.101 (West 2014).

discussed above, the evidence is sufficient to support the finding that appointment of M.J. as possessory conservator is not in A.J.'s best interest and would endanger A.J.'s emotional or physical wellbeing.  Therefore, the trial court did not abuse its discretion in denying M.J. possession and access to A.J.  We overrule M.J.'s second issue.


## DISPOSITION

Having overruled M.J.'s two issues, we ***affirm*** the trial court's judgment.


GREG NEELEY
Justice

Opinion delivered August 23, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 23, 2023**

**NO. 12-23-00079-CV**

**IN THE INTEREST OF A.J., A CHILD**

---

Appeal from the County Court at Law No. 2

of Angelina County, Texas (Tr.Ct.No. CV-00264-22-05)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed** for which execution may issue, and that this decision be certified to the court below for observance.

Justice Greg Neeley.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*